**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

JUN - 2 2011

DAVID CREWS, CLERK
By_____
Deputy

**TRONOX LLC**                                                     **PLAINTIFFS**

**v.**                                           NO. _1:11CV127-A-D_

**BE&K CONSTRUCTION COMPANY,**
**LLC, ACE AMERICAN INSURANCE**
**COMPANY, JOHN DOES 1-5, and ABC**                   **DEFENDANTS**
**CORPORATIONS A-E**

---

## COMPLAINT

---

Plaintiff Tronox LLC ("Tronox") files this Complaint against Defendants BE&K

Construction Company, LLC, formerly known as BE&K Construction Company ("BE&K"),

Ace American Insurance Company ("AAIC"), John Does 1-5, and ABC Corporations A-E.

### PARTIES

1.     Tronox is a Delaware limited liability company with its principal place of

business in the State of Oklahoma.

2.     BE&K is a Delaware limited liability company with its principal place of business

in the State of Alabama and may be served with process at 2000 International Park Drive,

Birmingham, Alabama 35202.

3.     AAIC is a Pennsylvania insurance company and may be served with process at

436 Walnut Street, Philadelphia, Pennsylvania 19106.

4.     The true names and capacities, whether individual, corporate, associate, or

otherwise of John Does 1 through 5 and ABC Corporations A through E inclusive, are unknown

to Tronox.  Tronox alleges, upon information and belief, that each of the defendants designated

herein as John Does 1 through 5 and ABC Corporations A through E may be responsible and

liable for the events and happenings referred to and proximately caused injury and damages to Tronox as herein alleged.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000).   There is an actual controversy within this Court's jurisdiction, wherein this Court may declare the rights of these parties pursuant to 28 U.S.C. § 2201.

6.      Venue is proper in the Eastern Division of the United States District Court for the Northern District of Mississippi pursuant to 28 U.S.C. §§ 104(a)(1) and 1391(a), (c).

## BACKGROUND

7.      On June 18, 2007, Tronox entered into a Master Work Agreement ("Agreement") with BE&K for construction and maintenance work to be performed from time to time at the Tronox facility located in Hamilton, MS ("Tronox facility").   A copy of the Agreement is attached as Exhibit "A."

8.      Pursuant to Paragraph 15 of the Agreement, BE&K agreed to defend and indemnify Tronox as follows:

> INDEMNITY. (a) Contractor agrees to indemnify, defend, and hold the Company free and harmless from and against any and all third party claims of liability, losses, damages, bodily injuries (including sickness, disease and death), property damages, contamination or adverse effects on the environment, fines, penalties and expenses directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order, unless caused by Company's sole negligence. (b) As used in this Paragraph, the term "Company" shall mean Tronox LLC, subsidiaries and affiliates of both, and the directors, officers, employees and agents of all the foregoing. The term "Affiliate" is defined as a company or other party that owns or controls, is owned or controlled by or is owned or controlled in common with Company.

Ex. "A," ¶ 15(a).

9.     Pursuant to Paragraph 16 of the Agreement, BE&K was required to purchase endorsements for its general liability and excess umbrella liability policies to include Tronox as an additional insured **"for losses caused by [BE&K's] work performed under the Agreement," without limitation**. The policies are required to "be primary to policies purchased and maintained by [Tronox]." Ex. "A," ¶ 16.

10.    BE&K obtained general liability coverage from AAIC and purchased coverage for Tronox as an additional insured. The policy, which is in the possession of BE&K and/or AAIC, was issued under policy number HDOG23740059.

11.    Gary Wells ("Wells"), an employee of BE&K, was involved in an accident on July 15, 2009, while working on a project on behalf of BE&K at the Tronox facility, and was allegedly injured. The Work Order related to this project is incorporated into the Agreement by reference and is attached as Exhibit "B."

12.    Following the accident, counsel for Tronox wrote BE&K twice, demanding indemnity pursuant to the Agreement and requesting that it put AAIC on notice of the accident. *See* correspondence attached as Exhibit "C."

13.    On January 20, 2011, Wells filed suit against Tronox in this Court to recover damages for his alleged injuries. *See Wells v. Tronox LLC*, No. 1:11-CV-23-M-D, Dkt. No. 1 ("*Wells*").

14.    Tronox has answered Wells' complaint and has denied all liability. Further, Tronox has maintained that Wells and/or BE&K are responsible in whole or in part for the accident and any resulting injuries.

15.    On February 22, 2011, BE&K informed Tronox that BE&K had put AAIC on notice of the *Wells* matter, but that it had only obtained insurance to cover its indemnity

obligations and had not procured coverage on behalf of Tronox for all losses related to the work of BE&K as required by the Agreement. *See* correspondence attached as Exhibit "D."

16.     On February 25, 2011, Tronox sent a final demand for defense and indemnity to BE&K, and notified BE&K of its breach of the Agreement due to its failure to procure proper and/or adequate insurance coverage. *See* correspondence attached as Exhibit "E."  To date, Tronox has not received a response to this correspondence.

## COUNT ONE: DECLARATORY JUDGMENT
### (BE&K)

17.     Tronox incorporates and realleges Paragraphs 1 through 16.

18.     BE&K has a duty under Paragraph 15 of the Agreement to provide a defense to Tronox in the *Wells* matter, as no determination of liability has been made.

19.     Thus, Tronox seeks a determination that BE&K has a duty to defend Tronox in the *Wells* matter.

20.     Further, to the extent persons and/or entities other than Tronox are found to be responsible in whole or in part for Wells' alleged injuries, Tronox seeks a determination that BE&K must indemnify Tronox for any judgment, settlement, or other loss incurred by Tronox related to any injuries caused in whole or in part by the fault of other persons and/or entities.

## COUNT TWO: DECLARATORY JUDGMENT
### (AAIC)

21.     Tronox incorporates and realleges Paragraphs 1 through 20.

22.     AAIC has a duty under the aforementioned liability policies to Tronox as an additional insured to provide a defense to Tronox in the *Wells* matter, as no determination of liability has been made.

{C0074410}                                                                                          4

23.     Thus, Tronox seeks a determination that AAIC has a duty to defend Tronox in the *Wells* matter.

24.     Further, to the extent persons and/or entities other than Tronox are found to be responsible in whole or in part for Wells' alleged injuries, Tronox seeks a determination that coverage exists under the applicable AAIC policy for any judgment, settlement, or other loss incurred by Tronox related to any injuries caused in whole or in part by the fault of other persons and/or entities.

**COUNT THREE: BREACH OF CONTRACT**
**(BE&K)**

25.     Tronox incorporates and realleges Paragraphs 1 through 24.

26.     Pursuant to Paragraph 16 of the Agreement, BE&K had a duty to obtain and provide Tronox with general liability and excess liability insurance coverage for all losses related to work performed by BE&K, regardless of fault. However, upon information and belief, BE&K only obtained insurance coverage for Tronox to insure its indemnity obligation under Paragraph 15 of the Agreement. Accordingly, BE&K breached the Agreement by failing to procure the proper and adequate insurance coverage in accordance with the Agreement.

27.     Had BE&K obtained the proper insurance in accordance with the Agreement, all of the claims pending in the *Wells* matter would have been covered under the policy. However, as a proximate result of BE&K's failure to provide proper and/or adequate coverage, Tronox is without insurance coverage, in whole or in part, for the claims pending in the *Wells* matter.

28.     Therefore, Tronox is entitled to damages resulting from BE&K's breach, including but not limited to all costs and attorneys' fees associated with its defense of the *Wells* matter and any judgment, settlement, or other loss resulting from the *Wells* matter.

WHEREFORE, PREMISES CONSIDERED, Tronox requests that the Court enter an order declaring that AAIC has a duty to defend Tronox in the *Wells* matter and that coverage exists under the applicable AAIC policy for any judgment, settlement, or other loss incurred by Tronox related to any injuries caused in whole or in part by the fault of other persons and/or entities. Additionally, Tronox requests that the Court enter an order declaring that BE&K has a duty to defend Tronox in the *Wells* matter and that BE&K must indemnify Tronox for any judgment, settlement, or other loss incurred by Tronox related to any injuries caused in whole or in part by the fault of other persons and/or entities. Further, Tronox requests that the Court award Tronox damages resulting from BE&K's breach of Paragraph 16 of the Agreement, including but not limited to all costs and attorneys' fees associated with its defense of the *Wells* matter and any judgment, settlement, or other loss resulting from the *Wells* matter.

This, the 2nd day of June, 2011.

Respectfully submitted,

TRONOX LLC

Scott F. Singley

OF COUNSEL:

J. Gordon Flowers, Esq., MSB No. 5378
E-mail: gflowers@brunini.com
Scott F. Singley, Esq., MSB No. 100134
E-mail: ssingley@brunini.com
Lindsey S. Wiseman, Esq., MSB No. 103248
E-mail: lwiseman@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
410 Main Street (39701)
Post Office Box 7520
Columbus, MS 39705-7520
Telephone:    (662) 240-9744
Facsimile:    (662) 240-4127

{C0074410}

# TRONOX

## TRONOX LLC

### MASTER-WORK AGREEMENT FOR
### CONSTRUCTION OR FIELD SERVICES
### (CLASS II)

THIS AGREEMENT is made and entered into as of the 18ᵗʰ day of June, 2007 by and between TRONOX LLC, ("Company") and BE&K Construction Company with offices at 2000 International Park Drive, Birmingham, AL 35243 ("Contractor") for work to be performed from time to time at the facility of the Company or one of its affiliates located at Hamilton, Mississippi ("Facility") under the following terms and conditions:

1.  WORK. All work that is to be performed from time to time hereunder by Contractor ("Work") shall be described in a Contractor Work Order ("Work Order"), a specimen form of which is attached hereto as Exhibit "A", to which may be attached plans, drawings and specifications governing such Work. Except as otherwise provided in a Work Order, Contractor shall at its own expense (a) furnish everything necessary, proper and incidental for the performance of the Work, including all labor, supervision, materials, tools, equipment, utility connects and disconnects, and services, (b) secure all necessary licenses and permits required for the prosecution of the Work under a Work Order and provide any bond required by law in connection therewith and (c) report and pay all taxes, including payroll, sales, use, excise and occupational taxes, applicable to materials and services furnished by Contractor under the Work Order. All means and methods used by Contractor in furtherance of the Work shall be Contractor's responsibility and under its control unless specified elsewhere within an applicable Work Order. It is understood that the Contractor will not be doing any design work.

2.  WORK ORDERS. A Work Order, when accepted by Contractor, shall be binding upon the parties hereto and shall incorporate by reference all of the terms and conditions hereof. In addition to the description of the Work to be performed by Contractor, a Work Order shall set forth Contractor's compensation for the Work and the date on which such Work is to be completed. A Work Order may vary the terms of this Agreement only when the Work Order expressly so states and sets forth the particular paragraph hereof that is to be varied. Nothing contained herein shall require the Company to order any Work by Contractor. Company shall be entitled to verbally issue or revise a Work Order where exigent circumstances exist but shall confirm the same in writing within a reasonable time thereafter.

3.  CONDITIONS AFFECTING THE WORK. Prior to signing a Work Order, Contractor will carefully inspect the Work Order along with the location of the Work and any physical constraints, any attached plans, drawings and specifications and call the Company's attention to any error or omission and question of intent associated with the Work Order. By accepting a Work Order, Contractor represents that it has complied with the requirements of the foregoing sentence. All such questions shall be resolved to the satisfaction of the Company and the Contractor prior to execution of the Work Order. During performance of the Work Order, Contractor will promptly inform the Company of variances from the Work Order arising from the location of the Work, proximity of the Work to adjacent facilities, conditions of the Work site, or otherwise, and it will promptly report any changes in anticipated costs or schedule associated with the variances. Any associated revisions to the Work Order shall be subject to the prior approval of the Company.

4.  LIMITATION OF AREAS OCCUPIED FOR WORK. Contractor shall restrict its presence and that of its employees to the area of the Work under the Work Order (including storage and parking areas and areas of access to and from the Work site), all as directed by the Company.



EXHIBIT

A

5.  WORK CHANGES. The Company may require changes in the scope of the Work under a Work Order at any time by written notice to Contractor, including increases and decreases therein. In such event the compensation payable to Contractor shall be adjusted by mutual agreement of the parties except where the increase or decrease in the Work under a Work Order involves items of the Work to be performed hereunder on a time, materials or other cost basis, or on a basis of units of Work, in which event Contractor shall be compensated on such basis for all such items or units of Work performed under a Work Order, whether there is an increase or decrease in such items or units of Work. No claim by Contractor for extra, additional or different Work under a Work Order or any extension of time within which to complete such Work will be allowed without the Company's written authorization and consent given prior to the undertaking of or incurring of any expense in connection therewith.

6.  CONTINUANCE OF WORK. If any dispute shall arise under a Work Order, including but not limited to disputes relating to payment, the Contractor shall, unless otherwise directed by the Company, continue to prosecute the Work pending resolution thereof by the courts or mutual agreement of the Company and Contractor.

7.  INSPECTION. The Company may conduct such tests and make such inspections of the Work under a Work Order as it deems desirable to ensure that the Work is being performed in accordance with the obligations of the Contractor under this Agreement and the Work Order. Company's right to inspect shall extend during normal business hours to Contractor's (and any applicable subcontractor's) facilities and shops where any portion of the Work is being performed, fabricated, manufactured or assembled as it reasonably deems necessary or appropriate. Contractor shall require in any subcontract permitted by Company that the subcontractor afford Company the access and inspection rights granted herein. If such tests or inspections indicate that the Work fails to satisfy such requirements, Contractor shall at its sole cost and expense remedy the deficiencies therein. Nothing herein shall be construed or interpreted to mean that any inspection, test or approval given by the Company or Company's representative shall relieve Contractor from its obligations under this Agreement and the Work Order, nor be deemed an admission that Contractor's Work is in accordance with the terms of this Agreement and the Work Order.

8.  NONINTERFERENCE WITH FACILITY / LIMITATION OF LIABILITY. All Work by the Contractor under a Work Order shall be done in such manner as not to interfere with the operation of the Facility and Contractor shall take all action necessary or as requested by the Company to effect the purposes of this Paragraph. Despite this obligation, in no event shall Contractor, its affiliated or associated companies, vendors or subcontractors be liable for any liabilities not expressly assumed in this Contract or for incidental, consequential, indirect or special damages or liabilities of any nature, whether arising from delay, shutdown or interruption of operations, loss of use of facilities, costs of replacement facilities, loss profits on collateral transactions or otherwise. The Company's remedies are limited to those expressly set forth in this contract. Limitations and waivers in this agreement shall apply to any claim against Contract, whether made in contract, breach of warranty, tort (including negligence), or other theory of law.

9.  ACCEPTANCE OF THE WORK. Upon the completion of the Work under a Work Order, the Company shall deliver to the Contractor its written acceptance thereof. Such acceptance or the use of the Work or any part thereof by the Company or the Company's payment of all or any part of the compensation payable to the Contractor under the Work Order shall not be construed or interpreted as an admission that the performance by the Contractor of the Work is in accordance with the requirements of this Agreement and the Work Order or preclude later assertion of claims against the Contractor for deficiencies in the Work.

10. WARRANTIES. Contractor warrants (i) that the Work under a Work Order shall be performed in a good, safe and workmanlike manner in conformity with the highest industry standards, methods and practices, free from defects in workmanship and shall be performed strictly in accordance with the provisions of this Agreement, and (ii) that all Contractor furnished materials and equipment, if any, incorporated into the Work shall conform to plans, drawings and specifications, if any, shall be new and free from defects, shall be fit for the use and purpose intended, and shall be free and clear of all liens, claims, security interests and encumbrances.

11.   REMEDY OF DEFICIENCIES, DAMAGE AND LOSS.  Contractor's liability for breach of warranty or failure or defect in performance of the Contract shall be limited to re-performing corrective services of the type originally performed by Contractor with its own forces, beginning at final completion and continuing for twelve (12) months thereafter, provided that Contractor receives written notice of defective work within the warranty period. With respect to parts of the Work performed by subcontractors, Contractor's liability shall be limited to enforcing the warranties given by the said subcontractor with respect to the defective Work.

THERE ARE NO OTHER WARRANTIES OR REMEDIES APPLICABLE TO BE&K'S WORK, ALL IMPLIED WARRANTIES OF EVERY KIND AND NATURE BEING HEREBY EXPRESSLY DISCLAIMED.

12.   COMPENSATION. The compensation specified in the Work Order shall be the entire compensation payable to Contractor for the Work and such compensation shall not be subject to adjustment for any reason except as provided in Paragraph 5 hereof. Contractor will send Company on a monthly basis an invoice on Contractor's letterhead for all Work performed, including Work, if any, rendered by third parties under contract with Contractor, through the date of the invoice. Payment shall be due thirty (30) days after receipt of an invoice by Company. The invoice will include a reasonable description of the Work performed, names of personnel providing services, location(s) where services were performed, dates worked, and the charges listed separately for each Work Order being invoiced. The invoice will reflect or show any discounts from Contractor's normal billing rates. Such discounts are not subject to recoupment by the Contractor in the future. All invoices submitted shall contain such additional detail as the Company may reasonably direct. If Contractor is to be compensated on a time, materials or other cost basis for all or any part of the Work under a Work Order, Contractor shall maintain its books and records with respect to such charges in accordance with generally accepted accounting practices ("GAAP)" or Other Comprehensive Basis of Accounting ("OCBOA") as may be necessary for Company's auditors to confirm compliance with the provisions of this Agreement and validate all charges contained in the invoices submitted by Contractor. Such books and records shall be retained for a period of two (2) years after the calendar year in which such charges are invoiced and the Company or its independent auditors shall have the right at all reasonable times during such period to audit and inspect such books and records to verify the charges.

13.   TERM. This Agreement shall remain in effect from the date first written above until terminated as provided in Paragraph 14.

14.   TERMINATION. Either party hereto may terminate this Agreement upon written notice to the other except that such termination by Contractor shall not be effective with respect to any Work Order accepted by the Contractor prior to such termination. The Company may, however, without the consent or fault of Contractor terminate the Work under a Work Order for the convenience of the Company at any time upon written notice to Contractor. If Contractor is to be compensated for all or any part of the Work under a Work Order on a time, materials or other cost basis, or on a basis of units of Work performed, Contractor shall upon such early termination by the Company be paid all compensation earned to the date of termination of such Work. If Contractor is to be compensated for all or any part of the Work under a Work Order on a lump sum basis, the compensation to be paid for such terminated Work shall be adjusted by the mutual agreement of the parties. In no event, however, shall Contractor be entitled to any prospective profits or reimbursement of prospective overhead, general expenses, administrative expenses or damages (consequential or otherwise) because of such early termination. In the event Contractor is terminated under a Work Order, Contractor hereby assigns to Company all approved subcontracts conditioned solely upon Company's acceptance of one or more such contracts by written notice to Contractor. Contractor shall include in all approved subcontracts a term binding subcontractor to such assignment.

15.   INDEMNITY. (a) Contractor agrees to indemnify, defend, and hold the Company free and harmless from and against any and all third party claims of liability, losses, damages, bodily injuries (including sickness, disease and death), property damages, contamination or adverse effects on the environment, fines,

penalties and expenses directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order, unless caused by Company's sole negligence. (b) As used in this Paragraph, the term "Company" shall mean Tronox LLC, subsidiaries and affiliates of both, and the directors, officers, employees and agents of all the foregoing. The term "Affiliate" is defined as a company or other party that owns or controls, is owned or controlled by or is owned or controlled in common with Company.

16. INSURANCE. At all times during the term of this Agreement, Contractor shall carry, at its own expense and with deductibles for its sole account, adequate insurance with reputable companies covering all work to be performed hereunder, with companies, forms, and amounts acceptable to Company, and shall furnish such evidence thereof as may be required by Company. All insurance companies must be authorized to do business in the state where the Work is to be performed, with an A.M. Best Company Inc. or equivalent rating of B+ or better or as otherwise acceptable to Company. Any failure by Contractor to obtain and maintain such coverages, including the additional insured requirements, shall constitute a breach hereof and Contractor shall be solely responsible for any loss suffered as a result of such deficiency in coverage. Contractor shall maintain without limitation the following minimum coverages:

    (A)    Workers' Compensation Insurance covering all employees as required to comply with the laws of the State where operations are conducted and Employer's Liability Insurance with a limit of not less than $500,000. If operations are conducted in a monopolistic state, the Employer's Liability Insurance shall be provided through a Stop Gap endorsement.

    (B)    General Liability Insurance covering all operations hereunder with a combined single limit of not less than $1,000,000 each occurrence for bodily injury and/or property damage. The policy shall include, but not be limited to, Products and Completed Operations, Independent Contractors (for work sublet), Pollution, Cross Liability, Broad Form Property Damage, Blanket Contractual Liability and coverage for Explosion (X), Collapse (C) and Underground (U) hazards.

    (C)    Automobile Liability Insurance covering all automotive equipment used in performing the Work hereunder (whether owned, non-owned or hired) with a combined single limit of not less than $1,000,000 each accident for bodily injury and/or property damage. If hauling hazardous waste, the policy shall have the Pollution Exclusion deleted and the MCS-90 endorsement attached.

    (D)    Excess Umbrella Liability Insured to total $5,000,000 when combined separately with each of the limits above.

Owner will insure or self insure its property and existing facilities at or near the site of the Work . Contractor shall be responsible for any damage to such property and existing facilities, arising as a result of the Work conducted by Contractor or any of its subcontractors and vendors, up to the amount of $1,000,000 (Owner's deductible). Owner hereby waives its rights and the subrogation rights of its insurers against Contractor, its subcontractors and vendors, for any loss or damage to such property, in excess of $1,000,000 .

The policies specified in (B) through (D) above shall be endorsed to included Company, as defined in Paragraph 15(b), as an additional insured for losses caused by Contractor's Work performed under the Agreement. The policies above shall be primary to policies purchased and maintained by Company. Except where not permitted under State law, all policies required herein shall expressly waive subrogation against the Company, as defined in Paragraph 15(b).

No form of liability "self-insurance" is acceptable or allowable under the terms of this Agreement unless agreed to in writing by both the Company and the Contractor prior to commencement of the Work.

Policy deductibles or retention are not considered "self-insurance" and such deductible or retention shall be for the account of the party procuring coverage.

If the policy or policies specified in (B) and/or (D) above is written on a "claims-made" basis, it must provide for (i) a retroactive date prior to, or coincident with, the commencement of the Work under this Agreement and (ii) a minimum extended claims reporting period of one (1) year.

Prior to commencing work hereunder, Contractor shall furnish Company with an insurance certificate as evidence of the above coverages and requirements and containing the following statement:

> "Thirty (30) days' prior written notice will be given to Tronox LLC in the event of cancellation or material change in coverage."

Contractor will provide the Company with any special insurance and additional coverages or limits which the Company may by notice to Contractor require with the reasonable cost thereof to be addressed by mutual agreement of the parties.

Contractor hereby waives any rights to recover against Company for loss or damage to Contractor's equipment, materials, and tools used in the performance of the Work. All insurance carried by Contractor and its subcontractors covering risk of loss or damage to materials, tools and equipment used in the performance of the Work shall provide a waiver of subrogation against the Company, as defined in Paragraph 15(b).

If Contractor or any of its subcontractors rents construction equipment for the Work, the party renting the equipment shall hold the other party and Company, as defined in Paragraph 15(b), free and harmless with respect to risk of loss of or damage to such equipment. Any insurance carried by Contractor or any of its subcontractors on such equipment shall provide for a waiver of subrogation against Company, as defined in Paragraph 15(b).

Contractor shall require all subcontractors to obtain, maintain and keep in force the same types and limits of insurance as required of the Contractor during the time in which they are engaged in performing work hereunder, and furnish Company acceptable evidence of such insurance coverage upon request. All policies of subcontractors shall be endorsed to provide a waiver of subrogation in favor of Company. Any deficiencies in such coverage shall be the sole responsibility of Contractor and the Contractor's insurance shall become Primary in the event of a claim.

It is expressly understood and agreed that the coverages required represent Company's minimum requirements and are not to be construed to void or limit Contractor's indemnity obligations as contained in this Agreement. Regardless of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of Contractor, the failure of any insurance company to pay claims accruing, or any exclusion to or insufficiency of coverage, shall not be held to affect, negate or waive any provisions of this Agreement. If any defense, indemnity or insurance provision contained in this Agreement conflicts with, is prohibited by or violates public policy under any federal, state or other law determined to be applicable to a particular situation arising or involving any Work hereunder, it is understood and agreed that the conflicting, prohibited or violating provisions shall be deemed automatically amended, effective *ab initio*, in that situation to the extent - but only to the extent - necessary to conform with, not be prohibited by and avoid violating public policy under such applicable law and so as to still accomplish as nearly as possible the intention of such provision as originally written. The parties hereto declare it is their intention that the defense, indemnity and insurance provisions of this Agreement be binding and enforceable in any given situation arising hereunder to the maximum extent permitted by the law applicable in that situation.

17. APPLICABLE LAWS. Contractor and its subcontractors shall at all times comply with all applicable laws (including, but not limited to, state and federal environmental laws and/or the Occupational Safety and Health Act of 1970, as amended), ordinances, rules, regulations, codes and orders of the United

States, any state, county or any executive or administrative agency thereof and any other governmental body having any jurisdiction over the Work under a Work Order.

18.   TITLE. Title to all Work completed or in the course of completion under a Work Order and title to all equipment and materials to be incorporated into the Work under a Work Order on account of which the Company has made any payment shall be in the Company. Notwithstanding title thereto being in the Company, the care, custody, control and protection of the Work under a Work Order and of such materials and equipment shall be with the Contractor, and the risk of loss or damage thereto shall be borne by Contractor until acceptance of the Work.

19.   PROPRIETARY INFORMATION. Contractor shall maintain in secrecy all proprietary information of the Company revealed to it during the performance of the Work hereunder, including that relating to equipment and to manufacturing processes, and shall secure from others in its employ, including any subcontractors, agreements for the benefit of the Company to effect the purpose of this Paragraph. All drawings, plans, specifications and other design documents (together, "Design Documents"), whether provided to, purchased or generated by Contractor in connection with a Work Order shall be deemed work for hire, and remain the property of Company including without limitation all applicable Copyrights. To the extent that all right title, and interest in and to the Design Documents do not vest in Company under the work for hire doctrine, then Contractor irrevocably assigns to Company without any further consideration all right, title, and interest in and to the Design Drawings. At the conclusion of the Work under any Work Order or upon termination of any Work Order or this Agreement, Contractor shall return to Company all copies of design drawings and other proprietary information or documents furnished to it by Company. Contractor shall not, except with the consent of the proprietor, disclose to Company nor use in the course of the Work any proprietary information, confidential information, inventions (patented or not) or trade secrets belonging to any other person, firm or corporation.

20.   "DEEMED EXPORT" ASSURANCE.   Contractor may, in the course of Work, be exposed to information, software, equipment or material which is controlled for export purposes under laws and regulations of the United States. Such exposure may constitute an unauthorized or "deemed export" to the home country of any person employed by Contractor who has neither U.S. citizenship nor permanent residency status. Therefore, Contractor represents and warrants that it will not employ any foreign national (non-U.S. citizen without permanent residency status) in the performance of Work without prior written authorization from Company or without first obtaining a license from the appropriate licensing authority of the United States government for such deemed export.

21.   NON-WAIVER AND SEVERABILITY. No course of dealing between the parties hereto nor any failure by the Company at any time, or from time to time, to enforce any term or condition of this Agreement or of a Work Order shall constitute a waiver of such term or condition, nor shall such course of dealing or failure affect such term or condition in any way or the right of the Company at any time to avail itself of such remedies as it may have for any breach of such term or condition. Should any provision of this Agreement or a Work Order be held invalid or unenforceable, the remaining terms and conditions of the Agreement will remain in full force and effect consistent with the terms and conditions of the Agreement and Work Order taken as a whole.

22.   PHOTOGRAPHS OF WORK AND PUBLICITY. No film or digital photograph of the Work or of the Facility shall be taken or used nor shall Contractor, its sub-contractors, vendors, or suppliers issue any press release or otherwise publicize the fact it is performing work for Company without prior written approval of Company. All negatives and prints of any photograph taken pursuant to Company's permission shall be the property of the Company and shall be delivered to it upon request. Any and all requests for comments, statements, interviews or any other information whatsoever in relation to Company, the Work or the Facility received from the news media or other third parties shall be referred to Company for response and further handling and shall not otherwise be acted upon by Contractor.

23.   ASSIGNMENT AND SUBCONTRACTING. Contractor shall not assign this Agreement or any Work Order, subcontract any of the Work under a Work Order, or assign any moneys to become due hereunder without the prior written consent of the Company. The consent of the Company to any such assignment

or subcontracting shall not relieve Contractor of the complete responsibility that the Work under a Work Order be performed in accordance with the terms and conditions of this Agreement and the Work Order and Contractor shall remain liable to the Company as if no such assignment or subcontract had been made. Contractor will "delegate" its obligations hereunder to all subcontractors and contractually bind any approved subcontractors to the Contractor to the same extent as Contractor is bound to the Company hereunder.

24.    CONTRACTOR LICENSED. Contractor represents that it has obtained all licenses and permits required by applicable federal, state and local laws, regulations and ordinances to do the Work under a Work Order. Contractor further represents that it is fully experienced and qualified to perform the Work under a Work Order and that it is properly equipped, organized and financed to perform and complete such Work.

25.    LIENS. Contractor shall discharge at once all liens which may be filed in connection with the Work under a Work Order and shall defend and hold the Company and Facility free and harmless therefrom. Prior to any payment under a Work Order and as a condition thereof, Contractor shall furnish to the Company written releases and lien waivers for all labor, materials or equipment used in performance of the Work.

26.    HOUSEKEEPING. Contractor shall at all times maintain good housekeeping at the Work site under a Work Order and upon completion of the Work shall remove all debris and waste material and leave the Work site in a neat and clean condition, all to the satisfaction of the Company. Additionally, Contractor shall employ sufficient safeguard procedures to protect the work site in the event of weather related emergencies such as high winds, flooding or the like.   Such safeguard procedures shall include requirements that all equipment and materials be secured or stored at the end of each day.

27.    OTHER CONTRACTORS. The Company reserves the right to enter into contracts with other contractors for work to be performed contemporaneously with the performance of Work under a Work Order whether or not such other work is related to the Work. Contractor agrees to fully cooperate with such other contractors, if any, in properly coordinating its work with theirs. The decision of the Company with respect to all matters of coordination shall be final and binding upon Contractor.

28.    INDEPENDENT CONTRACTOR. In performance of the Work under a Work Order, Contractor shall act solely as an independent contractor in performing the Work contemplated by this Agreement, and nothing herein shall, under any circumstances, constitute Contractor or its employees or subcontractors, the agent or employee of the Company for tax purposes (FICA, income and the like), for purposes of claiming entitlement to any benefits offered, paid or provided by the Company to the Company's employees including, but not limited to, medical, retirement, stock ownership or savings plans, or for any other purpose.   Contractor agrees to defend, indemnify and hold the Company free and harmless from and against any and all claims, demands and causes of action brought by or on behalf of Contractor's employees or subcontractors which are based on a claimed employee/employer or master/servant relationship between the Company and any such employee or subcontractor of Contractor or brought by any governmental entity, foreign or domestic, based upon any similar allegation or claim.

29.    SAFETY, HEALTH AND THE ENVIRONMENT. Contractor and its subcontractors shall at all times comply with the environmental, health and safety rules and regulations of the Company applicable to the Work and all materials, equipment and Work shall comply therewith. Contractor and its subcontractors, as well as their personnel, shall also comply with the drug and alcohol policy in effect at the Facility. Contractor shall provide Company written verification that such environmental, health and safety requirements, including the drug and alcohol policy, have been reviewed with the Contractor's and subcontractors' personnel and that they understand the requirements. Upon request of Company, Contractor shall direct each of its personnel engaged in the Work to read Company's safety handbook and standard "General Conditions of Service" form and then date, sign and return the same to Company. All personal protection equipment, including gloves, protective headgear, steel-toed footwear and safety glasses, shall be provided by Contractor at no expense to Company. Contractor shall be responsible for the lawful disposal of any waste generated during the course of the Work unless otherwise provided in the Work Order. Good housekeeping in the work area must be maintained at all times. Contractor shall promptly notify Company of (a) any accident or occurrence involving damage to Company or third party

property; (b) any illness or injury suffered by Contractor's personnel, resulting from, or in any way associated with, performance of the Work; or (c) any spills or releases of hazardous or toxic materials. Company may require removal of any personnel of Contractor or any subcontractor from the Facility in the best interest of the principles of Company's environmental, safety and health rules and regulations, including its drug and alcohol policy.

30.   CONFLICT OF INTEREST. Contractor shall not pay any commissions, fees or grant any rebates to any employee or officer of Company nor favor any employee or officer of Company with gifts or entertainment of other than nominal value nor enter into business arrangements with any employee or officer of Company, other than as a representative of Company, without the prior written approval of Company.

31.   ENTIRE AGREEMENT AND AMENDMENTS. No change, modification of or addition to this Agreement or any Work Order hereunder shall be effective unless in writing and signed by both parties. This Agreement and the Work Order constitutes the entire understanding between the parties and supercede any prior negotiations, understandings and agreements, written or oral, with respect to the Work.

32.   SURVIVAL. The provisions of Articles 8, 10, 11, 15, 16 (liability limitations) & 19 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TRONOX LLC                                                BE&K CONSTRUCTION COMPANY
                                                                   (Contractor)

By: _____              By: _____

Title: Plant Manager                                Title: VP Industrial Services


Tronox
Law Dept.

 **TRONOX INCORPORATED AND SUBSIDIARY COMPANIES**

Tronox Incorporated

CONTRACTOR WORK ORDER

| | |
|---|---|
| Contractor | |
| Work Order : 00395950 | |
| Release : | |
| Printed : 12/16/08 | |
| Page : 1 | |

BEK 2009 TO PROVIDE CONTRACT LABOR FOR UNIT 400 TII MECHANIC

Type : FIELD LABOR CONTRACT
Compensation : $37,400.00 USD
Pricing: ESTIMATE
Bill To:
Tronox LLC
Attn: Accounts Payable
P.O. Box 268859
Oklahoma City        OK 73126

Execution Date: 12/16/08
Start/End Date: 01/01/09 - 12/31/09
Project :
Work Location :

* Contractor shall perform the work described in the "Scope of Work" set out as Attachment A to this Contractor Work Order ("Work"). Contractor performance is subject to the terms and conditions of this Contractor Work Order and the Master Work Agreement for Construction or Field Services of the parties dated 6-18-07 .
* Compensation of Contractor Work Order will be paid within thirty days after completion of the Work and receipt of the invoice. Payment shall be pursuant to Exhibit A of the Agreement if time and materials or another cost basis pricing method is used.
* Time is of the essence and Contractor shall commence and complete the Work no later than the respective "Start/End Dates" noted above.

Contractor : 35439        01
B E & K INDUSTRIAL SERVICES
200 INTERNATIONAL PARK DR
PO BOX 2332

BIRMINGHAM        AL 35243

Please Direct Inquiries to:
   RAMONA R. GARDNER
Title: CONTRACT ADMIN.
Phone: 6623438672        Ext: 8672
Fax :

Contact:
Phone : 205 972-6535

_W D HHoly_
Contractor Authorized Signature

_BEK Site Manager_
Title

_1-5-09_
Date Signed        Phone

_Kenny Sanders_
Company Authorized Signature

_Contract Admin._
Title

_1-6-09_
Date Signed        Phone

**EXHIBIT
B**





## BRUNINI

ATTORNEYS AT LAW

**SCOTT F. SINGLEY**
E-mail: ssingley@brunini.com
Direct: 662.329.8360
Facsimile: 662.240.4127

410 Main Street          Post Office Box 7520
Columbus, Mississippi 39701 Columbus, Mississippi 39705

November 30, 2010

Mr. Tom Vaughn, Esq.
President
BE&K Construction Company
2000 International Park Drive
Birmingham, AL 35243

RE:   Gary Wells v. Tronox LLC

Dear Mr. Vaughn:

     I am writing on behalf of and we represent Tronox LLC, Hamilton Facility ("Tronox"). We are in receipt of a letter notifying Tronox that Gary Wells, a BE&K Construction Company ("BE&K") employee, has engaged representation to pursue a claim against Tronox resulting from an injury at Tronox on July 15, 2009. *See* Exhibit 1.

     BE&K agreed to:

     Indemnify, defend, and hold [Tronox] free and harmless from and against any and all . . . liability, losses, damages, bodily injuries (including sickness, disease, and death) . . . directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order . . . .

Master Work Agreement at ¶ 15. *See* Exhibit 2.

     Additionally, BE&K agreed to:

[M]aintain without limitation the following minimum coverages:

* * *

(B) General Liability Insurance covering all operations hereunder with a combined single limit of not less than $1,000,000 each occurrence for bodily injury and/or property damage

* * *

C0068655



**EXHIBIT**

*C*

November 30, 2010
Page 2

> (D) Excess Umbrella Liability Insured to total $5,000,000 when combined separately
> with each of the limits above.

* * *

> The policies specified in (B) through (D) above shall be endorsed to include[]
> [Tronox] . . . as an additional insured for losses caused by Contractor's Work
> performed under the Agreement.   The policies above shall be primary to policies
> purchased and maintained by [Tronox] . . . . [A]ll policies required herein shall
> expressly waive subrogation against [Tronox] . . . .

Master Work Agreement at ¶ 16. *See* Exhibit 2.

On January 6, 2009, BE&K entered a Contractor Work Order agreement with Tronox
pursuant to all terms and conditions in the Master Work Agreement. *See* Exhibit 3. BE&K agreed
to replace a rupture disk on a feed bin, among providing other contract labor, during the calendar
year of 2009. *See* Exhibit 3.

Mr. Wells' presence at Tronox on July 15, 2009 was solely as a contractor employed by
BE&K to perform the obligations of BE&K under the Contractor Work Order.[1]  Therefore, pursuant
to the Contractor Work Order and the Master Work Agreement, BE&K is obligated to indemnify
Tronox from and against any and all liability arising out of or resulting from Mr. Wells' work at
Tronox on July 15, 2009.  Accordingly, please confirm that you will agree, pursuant to paragraph
15 of the Master Work Agreement, to indemnify, defend, and hold Tronox harmless for all claims
Mr. Wells may assert related to this incident.

Additionally, please:

(a)   Confirm that you have the insurance required under paragraph 16 of the Master Work
      Agreement;
(b)   Confirm that Tronox has been named as an additional insured under the applicable
      policies;
(c)   Provide me copies of the policy or policies;
(d)   Confirm that you have notified your insurance carrier; and
(e)   Request it to contact me or provide me the name of the proper contact.

---

[1]   In addition to indemnification pursuant to the Master Work Agreement, Tronox reserves all other rights
to indemnity including but not limited to those implied by law.

November 30, 2010
Page 3

Thank you in advance for your cooperation.

Sincerely,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Scott F. Singley

SFS/bpw
cc:     Matt Paque, Esq. *(Via email)*
        Bill Stone *(Via email)*
        J. Gordon Flowers, Esq. *(Via email)*
        Lindsey S. Wiseman, Esq. *(Via email)*

C0068655

# NICHOLS, CROWELL, GILLIS, COOPER & AMOS, PLLC

*Attorneys At Law*

Regions Bank, Third Floor
710 Main Street
P.O. Box 1827
Columbus, MS 39703-1827
Telephone: (662) 243-7443
Fax: (662) 328-6890

Direct Telephone: (662)243-7384
Email: wcooper@nicholscrowell.com

Aubrey E. Nichols
John W. Crowell*
William F. Gillis
Marc D. Amos
William T. Cooper
M. Jay Nichols
Kristen W. Williams
*Also admitted to practice in Arkansas

February 5, 2010

Tronox
Attn:  Todd Goldman, Safety Director
40034 Tronox Road
Hamilton, MS 39746

Re:     Gary W. Wells

Dear Todd:

Please be advised that I have been retained by Gary W. Wells to represent his interest regarding injuries he received as a result of an accident which occurred on July 15, 2009 at the Tronox plant in Hamilton, Mississippi, while working for BE&K Industrial Services.  Mr. Wells was injured when an 8 inch pipe (with 2,300 pounds of pressure) containing titanium dioxide blew out, thereby knocking Mr. Wells from his ladder resulting in serious injuries to Mr. Wells, i.e. a shaft fracture and femoral neck fracture to his right hip.  Mr. Wells has a permanent limp and permanent impairment as a result of this injury.

It is my understanding that Tronox provided Mr. Wells and his employer a written permit to work on the pipe, thereby indicating that the vessel had been depressurized and was safe to work on.  He was subsequently informed by Tronox management that the "accident should never have happened."  It is my understanding that BE&K Industrial supervisors took a picture of the pipe after the explosion, but Tronox executives seized the photographs.

Please accept this letter as our formal request for any and all information in Tronox's possession regarding Mr. Wells's accident.  In order to properly evaluate Mr. Wells's claim, we specifically need the following:  Any and all photographs of the accident scene, the written work permit, any and all documents related to vessel depressurization prior to the work being performed, documents related to Tronox's investigation of the accident, any root/cause analyses performed by Tronox subsequent to the accident, written warnings, reprimands, or disciplinary actions taken as a result of the accident, any and all subsequent remedial measures taken as a result of the accident and a list of all witnesses and/or individuals who would have knowledge of the accident in question.  We further request any and all electronic communications related to the accident be preserved and produced.



**EXHIBIT**

1

**NICHOLS, CROWELL, GILLIS, COOPER & AMOS**

Tronox
February 5, 2010
Page 2 of 3

-------------------------

     Furthermore, we would like to schedule an on-site inspection for our expert in the near future. After you have had an opportunity to review our request, I ask that you or Tronox counsel give me a call so we can discuss this matter. In the meantime, if you need anything further, please do not hesitate to give me a call.

                    Sincerely,

                    William T. Cooper

WTC/mzw

cc     Gary Wells

# TRONOX

## TRONOX LLC

### MASTER-WORK AGREEMENT FOR
### CONSTRUCTION OR FIELD SERVICES
### (CLASS II)

THIS AGREEMENT is made and entered into as of the 18th day of June, 2007 by and between TRONOX LLC, ("Company") and BE&K Construction Company with offices at 2000 International Park Drive, Birmingham, AL 35243 ("Contractor") for work to be performed from time to time at the facility of the Company or one of its affiliates located at Hamilton, Mississippi ("Facility") under the following terms and conditions:

1. WORK. All work that is to be performed from time to time hereunder by Contractor ("Work") shall be described in a Contractor Work Order ("Work Order"), a specimen form of which is attached hereto as Exhibit "A", to which may be attached plans, drawings and specifications governing such Work. Except as otherwise provided in a Work Order, Contractor shall at its own expense (a) furnish everything necessary, proper and incidental for the performance of the Work, including all labor, supervision, materials, tools, equipment, utility connects and disconnects, and services, (b) secure all necessary licenses and permits required for the prosecution of the Work under a Work Order and provide any bond required by law in connection therewith and (c) report and pay all taxes, including payroll, sales, use, excise and occupational taxes, applicable to materials and services furnished by Contractor under the Work Order. All means and methods used by Contractor in furtherance of the Work shall be Contractor's responsibility and under its control unless specified elsewhere within an applicable Work Order. It is understood that the Contractor will not be doing any design work.

2. WORK ORDERS. A Work Order, when accepted by Contractor, shall be binding upon the parties hereto and shall incorporate by reference all of the terms and conditions hereof. In addition to the description of the Work to be performed by Contractor, a Work Order shall set forth Contractor's compensation for the Work and the date on which such Work is to be completed. A Work Order may vary the terms of this Agreement only when the Work Order expressly so states and sets forth the particular paragraph hereof that is to be varied. Nothing contained herein shall require the Company to order any Work by Contractor. Company shall be entitled to verbally issue or revise a Work Order where exigent circumstances exist but shall confirm the same in writing within a reasonable time thereafter.

3. CONDITIONS AFFECTING THE WORK. Prior to signing a Work Order, Contractor will carefully inspect the Work Order along with the location of the Work and any physical constraints, any attached plans, drawings and specifications and call the Company's attention to any error or omission and question of intent associated with the Work Order. By accepting a Work Order, Contractor represents that it has complied with the requirements of the foregoing sentence. All such questions shall be resolved to the satisfaction of the Company and the Contractor prior to execution of the Work Order. During performance of the Work Order, Contractor will promptly inform the Company of variances from the Work Order arising from the location of the Work, proximity of the Work to adjacent facilities, conditions of the Work site, or otherwise, and it will promptly report any changes in anticipated costs or schedule associated with the variances. Any associated revisions to the Work Order shall be subject to the prior approval of the Company.

4. LIMITATION OF AREAS OCCUPIED FOR WORK. Contractor shall restrict its presence and that of its employees to the area of the Work under the Work Order (including storage and parking areas and areas of access to and from the Work site), all as directed by the Company.

**EXHIBIT**

2

5. WORK CHANGES. The Company may require changes in the scope of the Work under a Work Order at any time by written notice to Contractor, including increases and decreases therein. In such event the compensation payable to Contractor shall be adjusted by mutual agreement of the parties except where the increase or decrease in the Work under a Work Order involves items of the Work to be performed hereunder on a time, materials or other cost basis, or on a basis of units of Work, in which event Contractor shall be compensated on such basis for all such items or units of Work performed under a Work Order, whether there is an increase or decrease in such items or units of Work. No claim by Contractor for extra, additional or different Work under a Work Order or any extension of time within which to complete such Work will be allowed without the Company's written authorization and consent given prior to the undertaking of or incurring of any expense in connection therewith.

6. CONTINUANCE OF WORK. If any dispute shall arise under a Work Order, including but not limited to disputes relating to payment, the Contractor shall, unless otherwise directed by the Company, continue to prosecute the Work pending resolution thereof by the courts or mutual agreement of the Company and Contractor.

7. INSPECTION. The Company may conduct such tests and make such inspections of the Work under a Work Order as it deems desirable to ensure that the Work is being performed in accordance with the obligations of the Contractor under this Agreement and the Work Order. Company's right to inspect shall extend during normal business hours to Contractor's (and any applicable subcontractor's) facilities and shops where any portion of the Work is being performed, fabricated, manufactured or assembled as it reasonably deems necessary or appropriate. Contractor shall require in any subcontract permitted by Company that the subcontractor afford Company the access and inspection rights granted herein. If such tests or inspections indicate that the Work fails to satisfy such requirements, Contractor shall at its sole cost and expense remedy the deficiencies therein. Nothing herein shall be construed or interpreted to mean that any inspection, test or approval given by the Company or Company's representative shall relieve Contractor from its obligations under this Agreement and the Work Order, nor be deemed an admission that Contractor's Work is in accordance with the terms of this Agreement and the Work Order.

8. NONINTERFERENCE WITH FACILITY / LIMITATION OF LIABILITY. All Work by the Contractor under a Work Order shall be done in such a manner as not to interfere with the operation of the Facility and Contractor shall take all action necessary or as requested by the Company to effect the purposes of this Paragraph. Despite this obligation, in no event shall Contractor, its affiliated or associated companies, vendors or subcontractors be liable for any liabilities not expressly assumed in this Contract or for incidental, consequential, indirect or special damages or liabilities of any nature, whether arising from delay, shutdown or interruption of operations, loss of use of facilities, costs of replacement facilities, loss profits on collateral transactions or otherwise. The Company's remedies are limited to those expressly set forth in this contract. Limitations and waivers in this agreement shall apply to any claim against Contract, whether made in contract, breach of warranty, tort (including negligence), or other theory of law.

9. ACCEPTANCE OF THE WORK. Upon the completion of the Work under a Work Order, the Company shall deliver to the Contractor its written acceptance thereof. Such acceptance or the use of the Work or any part thereof by the Company or the Company's payment of all or any part of the compensation payable to the Contractor under the Work Order shall not be construed or interpreted as an admission that the performance by the Contractor of the Work is in accordance with the requirements of this Agreement and the Work Order or preclude later assertion of claims against the Contractor for deficiencies in the Work.

10. WARRANTIES. Contractor warrants (i) that the Work under a Work Order shall be performed in a good, safe and workmanlike manner in conformity with the highest industry standards, methods and practices, free from defects in workmanship and shall be performed strictly in accordance with the provisions of this Agreement, and (ii) that all Contractor furnished materials and equipment, if any, incorporated into the Work shall conform to plans, drawings and specifications, if any, shall be new and free from defects, shall be fit for the use and purpose intended, and shall be free and clear of all liens, claims, security interests and encumbrances.

11.   REMEDY OF DEFICIENCIES, DAMAGE AND LOSS.  Contractor's liability for breach of warranty or failure or defect in performance of the Contract shall be limited to re-performing corrective services of the type originally performed by Contractor with its own forces, beginning at final completion and continuing for twelve (12) months thereafter, provided that Contractor receives written notice of defective work within the warranty period.  With respect to parts of the Work performed by subcontractors, Contractor's liability shall be limited to enforcing the warranties given by the said subcontractor with respect to the defective Work.

THERE ARE NO OTHER WARRANTIES OR REMEDIES APPLICABLE TO BE&K'S WORK, ALL IMPLIED WARRANTIES OF EVERY KIND AND NATURE BEING HEREBY EXPRESSLY DISCLAIMED.

12.   COMPENSATION. The compensation specified in the Work Order shall be the entire compensation payable to Contractor for the Work and such compensation shall not be subject to adjustment for any reason except as provided in Paragraph 5 hereof. Contractor will send Company on a monthly basis an invoice on Contractor's letterhead for all Work performed, including Work, if any, rendered by third parties under contract with Contractor, through the date of the invoice. Payment shall be due thirty (30) days after receipt of an invoice by Company. The invoice will include a reasonable description of the Work performed, names of personnel providing services, location(s) where services were performed, dates worked, and the charges listed separately for each Work Order being invoiced. The invoice will reflect or show any discounts from Contractor's normal billing rates. Such discounts are not subject to recoupment by the Contractor in the future. All invoices submitted shall contain such additional detail as the Company may reasonably direct. If Contractor is to be compensated on a time, materials or other cost basis for all or any part of the Work under a Work Order, Contractor shall maintain its books and records with respect to such charges in accordance with generally accepted accounting practices ("GAAP") or Other Comprehensive Basis of Accounting ("OCBOA") as may be necessary for Company's auditors to confirm compliance with the provisions of this Agreement and validate all charges contained in the invoices submitted by Contractor. Such books and records shall be retained for a period of two (2) years after the calendar year in which such charges are invoiced and the Company or its independent auditors shall have the right at all reasonable times during such period to audit and inspect such books and records to verify the charges.

13.   TERM. This Agreement shall remain in effect from the date first written above until terminated as provided in Paragraph 14.

14.   TERMINATION. Either party hereto may terminate this Agreement upon written notice to the other except that such termination by Contractor shall not be effective with respect to any Work Order accepted by the Contractor prior to such termination. The Company may, however, without the consent or fault of Contractor terminate the Work under a Work Order for the convenience of the Company at any time upon written notice to Contractor. If Contractor is to be compensated for all or any part of the Work under a Work Order on a time, materials or other cost basis, or on a basis of units of Work performed, Contractor shall upon such early termination by the Company be paid all compensation earned to the date of termination of such Work. If Contractor is to be compensated for all or any part of the Work under a Work Order on a lump sum basis, the compensation to be paid for such terminated Work shall be adjusted by the mutual agreement of the parties. In no event, however, shall Contractor be entitled to any prospective profits or reimbursement of prospective overhead, general expenses, administrative expenses or damages (consequential or otherwise) because of such early termination. In the event Contractor is terminated under a Work Order, Contractor hereby assigns to Company all approved subcontracts conditioned solely upon Company's acceptance of one or more such contracts by written notice to Contractor. Contractor shall include in all approved subcontracts a term binding subcontractor to such assignment.

15.   INDEMNITY. (a) Contractor agrees to indemnify, defend, and hold the Company free and harmless from and against any and all third party claims of liability, losses, damages, bodily injuries (including sickness, disease and death), property damages, contamination or adverse effects on the environment, fines,

penalties and expenses directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order, unless caused by Company's sole negligence. (b) As used in this Paragraph, the term "Company" shall mean Tronox LLC, subsidiaries and affiliates of both, and the directors, officers, employees and agents of all the foregoing. The term "Affiliate" is defined as a company or other party that owns or controls, is owned or controlled by or is owned or controlled in common with Company.

16.  INSURANCE.  At all times during the term of this Agreement, Contractor shall carry, at its own expense and with deductibles for its sole account, adequate insurance with reputable companies covering all work to be performed hereunder, with companies, forms, and amounts acceptable to Company, and shall furnish such evidence thereof as may be required by Company.  All insurance companies must be authorized to do business in the state where the Work is to be performed, with an A.M. Best Company Inc. or equivalent rating of B+ or better or as otherwise acceptable to Company.  Any failure by Contractor to obtain and maintain such coverages, including the additional insured requirements, shall constitute a breach hereof and Contractor shall be solely responsible for any loss suffered as a result of such deficiency in coverage.  Contractor shall maintain without limitation the following minimum coverages:

(A)    Workers' Compensation Insurance covering all employees as required to comply with the laws of the State where operations are conducted and Employer's Liability Insurance with a limit of not less than $500,000.  If operations are conducted in a monopolistic state, the Employer's Liability Insurance shall be provided through a Stop Gap endorsement.

(B)    General Liability Insurance covering all operations hereunder with a combined single limit of not less than $1,000,000 each occurrence for bodily injury and/or property damage.  The policy shall include, but not be limited to, Products and Completed Operations, Independent Contractors (for work sublet), Pollution, Cross Liability, Broad Form Property Damage, Blanket Contractual Liability and coverage for Explosion (X), Collapse (C) and Underground (U) hazards.

(C)    Automobile Liability Insurance covering all automotive equipment used in performing the Work hereunder (whether owned, non-owned or hired) with a combined single limit of not less than $1,000,000 each accident for bodily injury and/or property damage.  If hauling hazardous waste, the policy shall have the Pollution Exclusion deleted and the MCS-90 endorsement attached.

(D)    Excess Umbrella Liability Insured to total $5,000,000 when combined separately with each of the limits above.

Owner will insure or self insure its property and existing facilities at or near the site of the Work . Contractor shall be responsible for any damage to such property and existing facilities, arising as a result of the Work conducted by Contractor or any of its subcontractors and vendors, up to the amount of $1,000,000 (Owner's deductible).  Owner hereby waives its rights and the subrogation rights of its insurers against Contractor, its subcontractors and vendors, for any loss or damage to such property, in excess of $1,000,000 .

The policies specified in (B) through (D) above shall be endorsed to included Company, as defined in Paragraph 15(b), as an additional insured  for losses caused by Contractor's Work performed under the Agreement.  The policies above shall be primary to policies purchased and maintained by Company. Except where not permitted under State law, all policies required herein shall expressly waive subrogation against the Company, as defined in Paragraph 15(b).

No form of liability "self-insurance" is acceptable or allowable under the terms of this Agreement unless agreed to in writing by both the Company and the Contractor prior to commencement of the Work.

Policy deductibles or retention are not considered "self-insurance" and such deductible or retention shall be for the account of the party procuring coverage.

If the policy or policies specified in (B) and/or (D) above is written on a "claims-made" basis, it must provide for (i) a retroactive date prior to, or coincident with, the commencement of the Work under this Agreement and (ii) a minimum extended claims reporting period of one (1) year.

Prior to commencing work hereunder, Contractor shall furnish Company with an insurance certificate as evidence of the above coverages and requirements and containing the following statement:

> "Thirty (30) days' prior written notice will be given to Tronox LLC in the event of cancellation or material change in coverage."

Contractor will provide the Company with any special insurance and additional coverages or limits which the Company may by notice to Contractor require with the reasonable cost thereof to be addressed by mutual agreement of the parties.

Contractor hereby waives any rights to recover against Company for loss or damage to Contractor's equipment, materials, and tools used in the performance of the Work. All insurance carried by Contractor and its subcontractors covering risk of loss or damage to materials, tools and equipment used in the performance of the Work shall provide a waiver of subrogation against the Company, as defined in Paragraph 15(b).

If Contractor or any of its subcontractors rents construction equipment for the Work, the party renting the equipment shall hold the other party and Company, as defined in Paragraph 15(b), free and harmless with respect to risk of loss of or damage to such equipment. Any insurance carried by Contractor or any of its subcontractors on such equipment shall provide for a waiver of subrogation against Company, as defined in Paragraph 15(b).

Contractor shall require all subcontractors to obtain, maintain and keep in force the same types and limits of insurance as required of the Contractor during the time in which they are engaged in performing work hereunder, and furnish Company acceptable evidence of such insurance coverage upon request.  All policies of subcontractors shall be endorsed to provide a waiver of subrogation in favor of Company. Any deficiencies in such coverage shall be the sole responsibility of Contractor and the Contractor's insurance shall become Primary in the event of a claim.

It is expressly understood and agreed that the coverages required represent Company's minimum requirements and are not to be construed to void or limit Contractor's indemnity obligations as contained in this Agreement. Regardless of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of Contractor, the failure of any insurance company to pay claims accruing, or any exclusion to or insufficiency of coverage, shall not be held to affect, negate or waive any provisions of this Agreement. If any defense, indemnity or insurance provision contained in this Agreement conflicts with, is prohibited by or violates public policy under any federal, state or other law determined to be applicable to a particular situation arising or involving any Work hereunder, it is understood and agreed that the conflicting, prohibited or violating provisions shall be deemed automatically amended, effective *ab initio,* in that situation to the extent - but only to the extent - necessary to conform with, not be prohibited by and avoid violating public policy under such applicable law and so as to still accomplish as nearly as possible the intention of such provision as originally written. The parties hereto declare it is their intention that the defense, indemnity and insurance provisions of this Agreement be binding and enforceable in any given situation arising hereunder to the maximum extent permitted by the law applicable in that situation.

17.   APPLICABLE LAWS. Contractor and its subcontractors shall at all times comply with all applicable laws (including, but not limited to, state and federal environmental laws and/or the Occupational Safety and Health Act of 1970, as amended), ordinances, rules, regulations, codes and orders of the United

States, any state, county or any executive or administrative agency thereof and any other governmental body having any jurisdiction over the Work under a Work Order.

18. TITLE. Title to all Work completed or in the course of completion under a Work Order and title to all equipment and materials to be incorporated into the Work under a Work Order on account of which the Company has made any payment shall be in the Company. Notwithstanding title thereto being in the Company, the care, custody, control and protection of the Work under a Work Order and of such materials and equipment shall be with the Contractor, and the risk of loss or damage thereto shall be borne by Contractor until acceptance of the Work.

19. PROPRIETARY INFORMATION. Contractor shall maintain in secrecy all proprietary information of the Company revealed to it during the performance of the Work hereunder, including that relating to equipment and to manufacturing processes, and shall secure from others in its employ, including any subcontractors, agreements for the benefit of the Company to effect the purpose of this Paragraph. All drawings, plans, specifications and other design documents (together, "Design Documents"), whether provided to, purchased or generated by Contractor in connection with a Work Order shall be deemed work for hire, and remain the property of Company including without limitation all applicable Copyrights. To the extent that all right title, and interest in and to the Design Documents do not vest in Company under the work for hire doctrine, then Contractor irrevocably assigns to Company without any further consideration all right, title, and interest in and to the Design Drawings. At the conclusion of the Work under any Work Order or upon termination of any Work Order or this Agreement, Contractor shall return to Company all copies of design drawings and other proprietary information or documents furnished to it by Company. Contractor shall not, except with the consent of the proprietor, disclose to Company nor use in the course of the Work any proprietary information, confidential information, inventions (patented or not) or trade secrets belonging to any other person, firm or corporation.

20. "DEEMED EXPORT" ASSURANCE.   Contractor may, in the course of Work, be exposed to information, software, equipment or material which is controlled for export purposes under laws and regulations of the United States. Such exposure may constitute an unauthorized or "deemed export" to the home country of any person employed by Contractor who has neither U.S. citizenship nor permanent residency status. Therefore, Contractor represents and warrants that it will not employ any foreign national (non-U.S. citizen without permanent residency status) in the performance of Work without prior written authorization from Company or without first obtaining a license from the appropriate licensing authority of the United States government for such deemed export.

21. NON-WAIVER AND SEVERABILITY. No course of dealing between the parties hereto nor any failure by the Company at any time, or from time to time, to enforce any term or condition of this Agreement or of a Work Order shall constitute a waiver of such term or condition, nor shall such course of dealing or failure affect such term or condition in any way or the right of the Company at any time to avail itself of such remedies as it may have for any breach of such term or condition. Should any provision of this Agreement or a Work Order be held invalid or unenforceable, the remaining terms and conditions of the Agreement will remain in full force and effect consistent with the terms and conditions of the Agreement and Work Order taken as a whole.

22. PHOTOGRAPHS OF WORK AND PUBLICITY. No film or digital photograph of the Work or of the Facility shall be taken or used nor shall Contractor, its sub-contractors, vendors, or suppliers issue any press release or otherwise publicize the fact it is performing work for Company without prior written approval of Company. All negatives and prints of any photograph taken pursuant to Company's permission shall be the property of the Company and shall be delivered to it upon request. Any and all requests for comments, statements, interviews or any other information whatsoever in relation to Company, the Work or the Facility received from the news media or other third parties shall be referred to Company for response and further handling and shall not otherwise be acted upon by Contractor.

23. ASSIGNMENT AND SUBCONTRACTING. Contractor shall not assign this Agreement or any Work Order, subcontract any of the Work under a Work Order, or assign any moneys to become due hereunder without the prior written consent of the Company. The consent of the Company to any such assignment

or subcontracting shall not relieve Contractor of the complete responsibility that the Work under a Work Order be performed in accordance with the terms and conditions of this Agreement and the Work Order and Contractor shall remain liable to the Company as if no such assignment or subcontract had been made. Contractor will "delegate" its obligations hereunder to all subcontractors and contractually bind any approved subcontractors to the Contractor to the same extent as Contractor is bound to the Company hereunder.

24.   CONTRACTOR LICENSED. Contractor represents that it has obtained all licenses and permits required by applicable federal, state and local laws, regulations and ordinances to do the Work under a Work Order. Contractor further represents that it is fully experienced and qualified to perform the Work under a Work Order and that it is properly equipped, organized and financed to perform and complete such Work.

25.   LIENS. Contractor shall discharge at once all liens which may be filed in connection with the Work under a Work Order and shall defend and hold the Company and Facility free and harmless therefrom. Prior to any payment under a Work Order and as a condition thereof, Contractor shall furnish to the Company written releases and lien waivers for all labor, materials or equipment used in performance of the Work.

26.   HOUSEKEEPING. Contractor shall at all times maintain good housekeeping at the Work site under a Work Order and upon completion of the Work shall remove all debris and waste material and leave the Work site in a neat and clean condition, all to the satisfaction of the Company. Additionally, Contractor shall employ sufficient safeguard procedures to protect the work site in the event of weather related emergencies such as high winds, flooding or the like. Such safeguard procedures shall include requirements that all equipment and materials be secured or stored at the end of each day.

27.   OTHER CONTRACTORS. The Company reserves the right to enter into contracts with other contractors for work to be performed contemporaneously with the performance of Work under a Work Order whether or not such other work is related to the Work. Contractor agrees to fully cooperate with such other contractors, if any, in properly coordinating its work with theirs. The decision of the Company with respect to all matters of coordination shall be final and binding upon Contractor.

28.   INDEPENDENT CONTRACTOR. In performance of the Work under a Work Order, Contractor shall act solely as an independent contractor in performing the Work contemplated by this Agreement, and nothing herein shall, under any circumstances, constitute Contractor or its employees or subcontractors, the agent or employee of the Company for tax purposes (FICA, income and the like), for purposes of claiming entitlement to any benefits offered, paid or provided by the Company to the Company's employees including, but not limited to, medical, retirement, stock ownership or savings plans, or for any other purpose. Contractor agrees to defend, indemnify and hold the Company free and harmless from and against any and all claims, demands and causes of action brought by or on behalf of Contractor's employees or subcontractors which are based on a claimed employee/employer or master/servant relationship between the Company and any such employee or subcontractor of Contractor or brought by any governmental entity, foreign or domestic, based upon any similar allegation or claim.

29.   SAFETY, HEALTH AND THE ENVIRONMENT. Contractor and its subcontractors shall at all times comply with the environmental, health and safety rules and regulations of the Company applicable to the Work and all materials, equipment and Work shall comply therewith. Contractor and its subcontractors, as well as their personnel, shall also comply with the drug and alcohol policy in effect at the Facility. Contractor shall provide Company written verification that such environmental, health and safety requirements, including the drug and alcohol policy, have been reviewed with the Contractor's and subcontractors' personnel and that they understand the requirements. Upon request of Company, Contractor shall direct each of its personnel engaged in the Work to read Company's safety handbook and standard "General Conditions of Service" form and then date, sign and return the same to Company. All personal protection equipment, including gloves, protective headgear, steel-toed footwear and safety glasses, shall be provided by Contractor at no expense to Company. Contractor shall be responsible for the lawful disposal of any waste generated during the course of the Work unless otherwise provided in the Work Order. Good housekeeping in the work area must be maintained at all times. Contractor shall promptly notify Company of (a) any accident or occurrence involving damage to Company or third party

property; (b) any illness or injury suffered by Contractor's personnel, resulting from, or in any way associated with, performance of the Work; or (c) any spills or releases of hazardous or toxic materials. Company may require removal of any personnel of Contractor or any subcontractor from the Facility in the best interest of the principles of Company's environmental, safety and health rules and regulations, including its drug and alcohol policy.

30.  CONFLICT OF INTEREST.  Contractor shall not pay any commissions, fees or grant any rebates to any employee or officer of Company nor favor any employee or officer of Company with gifts or entertainment of other than nominal value nor enter into business arrangements with any employee or officer of Company, other than as a representative of Company, without the prior written approval of Company.

31.  ENTIRE AGREEMENT AND AMENDMENTS.  No change, modification of or addition to this Agreement or any Work Order hereunder shall be effective unless in writing and signed by both parties. This Agreement and the Work Order constitutes the entire understanding between the parties and supercede any prior negotiations, understandings and agreements, written or oral, with respect to the Work.

32.  SURVIVAL.  The provisions of Articles 8, 10, 11, 15, 16 (liability limitations) & 19 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TRONOX LLC                                      BE&K CONSTRUCTION COMPANY
                                                          (Contractor)

By:_____            By:_____

Title:  Plant Manager                          Title:  VP Industrial Services


                    Tronox
                    Law Dept

 **TRONOX INCORPORATED**
**AND SUBSIDIARY COMPANIES**

Tronox Incorporated

CONTRACTOR WORK ORDER

```
Contractor
Work Order : 00395950
Release    :

Printed : 12/16/08
Page    :    1
```

## BEK 2009 TO PROVIDE CONTRACT LABOR FOR UNIT 400 TII MECHANIC

Type    : FIELD LABOR CONTRACT          Execution Date: 12/16/08
Compensation :    $37,400.00 USD        Start/End Date: 01/01/09 - 12/31/09
Pricing: ESTIMATE                       Project      :
Bill To:                                Work Location :
Tronox LLC
Attn: Accounts Payable
P.O. Box 268859
Oklahoma City        OK 73126

* Contractor shall perform the work described in the "Scope of Work" set out as
  Attachment A to this Contractor Work Order ("Work"). Contractor performance
  is subject to the terms and conditions of this Contractor Work Order and the
  Master Work Agreement for Construction or Field Services of the parties dated
  6-18-07 .
* Compensation of Contractor Work Order will be paid within thirty days after
  completion of the Work and receipt of the invoice. Payment shall be pursuant
  to Exhibit A of the Agreement if time and materials or another cost basis
  pricing method is used.
* Time is of the essence and Contractor shall commence and complete the Work no
  later than the respective "Start/End Dates" noted above.

Contractor : 35439          01        Please Direct Inquiries to:
B E & K INDUSTRIAL SERVICES               RAMONA R. GARDNER
200 INTERNATIONAL PARK DR            Title: CONTRACT ADMIN.
PO BOX 2332                          Phone: 6623438672          Ext: 8672
                                     Fax  :
BIRMINGHAM          AL 35243

Contact:
Phone  : 205 972-6535

_WDHrly_
Contractor Authorized Signature          Company Authorized Signature
_BEK Site Manager_                       _Contract Admin._
Title                                    Title
_1-5-09_                                 _1-6-09_
Date Signed          Phone               Date Signed          Phone

**EXHIBIT**

3





ATTORNEYS AT LAW

SCOTT F. SINGLEY                410 Main Street          Post Office Box 7520
E-mail: ssingley@brunini.com   Columbus, Mississippi 39701 Columbus, Mississippi 39705
Direct: 662.329.8360
Facsimile: 662.240.4127

February 11, 2011

Mr. Tom Vaughn, President
BE&K Construction Company
2000 International Park Drive
Birmingham, AL 35243

RE:   Gary Wells v. Tronox LLC

Dear Mr. Vaughn:

On November 30, 2010, I sent the letter attached hereto as Exhibit "A" to BE&K Construction
Company ("BE&K") to notify it of a potential claim against Tronox LLC ("Tronox") by Gary Wells
("Wells"), who is a current or former employee of BE&K assigned to its operations at Tronox's
Hamilton, Mississippi facility. Further, the letter demanded that BE&K agree, pursuant to paragraph
15 of the Master Work Agreement between Tronox and BE&K, to "[i]ndemnify, defend, and hold
[Tronox] free and harmless" from and against any and all claims asserted by Wells, and to also
provide confirmation of insurance coverage pursuant to paragraph 16 of the Master Work
Agreement.   To date, we have not received a response from BE&K to the November 30th
correspondence.

On or about February 4, 2011, Tronox was served with the Complaint attached hereto as Exhibit
"B", which has been filed by Wells against Tronox in the United States District Court for the
Northern District of Mississippi. Tronox reiterates its demand that BE&K agree to "[i]ndemnify,
defend, and hold [Tronox] free and harmless . . ." from all claims asserted by Wells in this matter.
Additionally, Tronox reiterates its request that BE&K confirm that it (1) obtained the insurance
coverage required under paragraph 16 of the Master Work Agreement; (2) confirm that Tronox was
named as an additional insured under the applicable policies; (3) provide us copies of the policy or
policies, and (4) confirm that the insurance carrier has been notified of the claims asserted by Wells.

We look forward to receiving BE&K's prompt response to this correspondence. However, if Tronox
has not received a satisfactory to its demands and requests within the next ten (10) business days,
it will have no choice but to pursue all legal rights that it possesses pursuant to the Master Work
Agreement.

C0071355

February 11, 2011
Page 2

Sincerely,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Scott F. Singley

SFS/bpw

cc:     Matt Paque, Esq., *via email*
        Bill Stone, *via email*
        J. Gordon Flowers, Esq., *via email*
        Lindsey S. Wiseman, Esq., *via email*
        Bill Schendel

C0071355



SCOTT F. SINGLEY       410 Main Street        Post Office Box 7520
E-mail: ssingley@brunini.com   Columbus, Mississippi 39701 Columbus, Mississippi 39705
Direct: 662.329.8360
Facsimile: 662.240.4127

ATTORNEYS AT LAW

November 30, 2010

Mr. Tom Vaughn, Esq.
President
BE&K Construction Company
2000 International Park Drive
Birmingham, AL 35243

RE:   Gary Wells v. Tronox LLC

Dear Mr. Vaughn:

I am writing on behalf of and we represent Tronox LLC, Hamilton Facility ("Tronox"). We are in receipt of a letter notifying Tronox that Gary Wells, a BE&K Construction Company ("BE&K") employee, has engaged representation to pursue a claim against Tronox resulting from an injury at Tronox on July 15, 2009. *See* Exhibit 1.

BE&K agreed to:

Indemnify, defend, and hold [Tronox] free and harmless from and against any and all . . . liability, losses, damages, bodily injuries (including sickness, disease, and death) . . . directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order . . . .

Master Work Agreement at ¶ 15. *See* Exhibit 2.

Additionally, BE&K agreed to:

[M]aintain without limitation the following minimum coverages:

\* \* \*

(B) General Liability Insurance covering all operations hereunder with a combined single limit of not less than $1,000,000 each occurrence for bodily injury and/or property damage

\* \* \*

C0068655



**EXHIBIT**

tabbies

A

November 30, 2010
Page 2

(D) Excess Umbrella Liability Insured to total $5,000,000 when combined separately with each of the limits above.

\* \* \*

The policies specified in (B) through (D) above shall be endorsed to include[] [Tronox] . . . as an additional insured for losses caused by Contractor's Work performed under the Agreement. The policies above shall be primary to policies purchased and maintained by [Tronox] . . . . [A]ll policies required herein shall expressly waive subrogation against [Tronox] . . . .

Master Work Agreement at ¶ 16. *See* Exhibit 2.

On January 6, 2009, BE&K entered a Contractor Work Order agreement with Tronox pursuant to all terms and conditions in the Master Work Agreement. *See* Exhibit 3. BE&K agreed to replace a rupture disk on a feed bin, among providing other contract labor, during the calendar year of 2009. *See* Exhibit 3.

Mr. Wells' presence at Tronox on July 15, 2009 was solely as a contractor employed by BE&K to perform the obligations of BE&K under the Contractor Work Order.[1] Therefore, pursuant to the Contractor Work Order and the Master Work Agreement, BE&K is obligated to indemnify Tronox from and against any and all liability arising out of or resulting from Mr. Wells' work at Tronox on July 15, 2009. Accordingly, please confirm that you will agree, pursuant to paragraph 15 of the Master Work Agreement, to indemnify, defend, and hold Tronox harmless for all claims Mr. Wells may assert related to this incident.

Additionally, please:

(a)     Confirm that you have the insurance required under paragraph 16 of the Master Work Agreement;
(b)     Confirm that Tronox has been named as an additional insured under the applicable policies;
(c)     Provide me copies of the policy or policies;
(d)     Confirm that you have notified your insurance carrier; and
(e)     Request it to contact me or provide me the name of the proper contact.

---

[1]     In addition to indemnification pursuant to the Master Work Agreement, Tronox reserves all other rights to indemnity including but not limited to those implied by law.

C0068655

November 30, 2010
Page 3

Thank you in advance for your cooperation.

Sincerely,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Scott F. Singley

SFS/bpw
cc:    Matt Paque, Esq. *(Via email)*
       Bill Stone *(Via email)*
       J. Gordon Flowers, Esq. *(Via email)*
       Lindsey S. Wiseman, Esq. *(Via email)*

C0068655

# NICHOLS, CROWELL, GILLIS, COOPER & AMOS, PLLC

*Attorneys At Law*

Regions Bank, Third Floor
710 Main Street
P.O. Box 1827
Columbus, MS 39703-1827
Telephone: (662) 243-7443
Fax: (662) 328-6890

Direct Telephone: (662)243-7834
Email: wcooper@nicholscrowell.com

Aubrey E. Nichols
John W. Crowell*
William F. Gillis
Marc D. Amos
William T. Cooper
M. Jay Nichols
Kristen W. Williams
*Also admitted to practice in Arkansas

February 5, 2010

Tronox
Attn: Todd Goldman, Safety Director
40034 Tronox Road
Hamilton, MS 39746

Re:   Gary W. Wells

Dear Todd:

Please be advised that I have been retained by Gary W. Wells to represent his interest regarding injuries he received as a result of an accident which occurred on July 15, 2009 at the Tronox plant in Hamilton, Mississippi, while working for BE&K Industrial Services. Mr. Wells was injured when an 8 inch pipe (with 2,300 pounds of pressure) containing titanium dioxide blew out, thereby knocking Mr. Wells from his ladder resulting in serious injuries to Mr. Wells, i.e. a shaft fracture and femoral neck fracture to his right hip. Mr. Wells has a permanent limp and permanent impairment as a result of this injury.

It is my understanding that Tronox provided Mr. Wells and his employer a written permit to work on the pipe, thereby indicating that the vessel had been depressurized and was safe to work on. He was subsequently informed by Tronox management that the "accident should never have happened." It is my understanding that BE&K Industrial supervisors took a picture of the pipe after the explosion, but Tronox executives seized the photographs.

Please accept this letter as our formal request for any and all information in Tronox's possession regarding Mr. Wells's accident. In order to properly evaluate Mr. Wells's claim, we specifically need the following: Any and all photographs of the accident scene, the written work permit, any and all documents related to vessel depressurization prior to the work being performed, documents related to Tronox's investigation of the accident, any root/cause analyses performed by Tronox subsequent to the accident, written warnings, reprimands, or disciplinary actions taken as a result of the accident, any and all subsequent remedial measures taken as a result of the accident and a list of all witnesses and/or individuals who would have knowledge of the accident in question. We further request any and all electronic communications related to the accident be preserved and produced.

**EXHIBIT**

1

NICHOLS, CROWELL, GILLIS, COOPER & AMOS

Tronox
February 5, 2010
Page 2 of 3

----------------------

     Furthermore, we would like to schedule an on-site inspection for our expert in the near future. After you have had an opportunity to review our request, I ask that you or Tronox counsel give me a call so we can discuss this matter. In the meantime, if you need anything further, please do not hesitate to give me a call.

                    Sincerely,

                    William T. Cooper

WTC/mzw

cc    Gary Wells

# TRONOX

## TRONOX LLC

### MASTER-WORK AGREEMENT FOR
### CONSTRUCTION OR FIELD SERVICES
### (CLASS II)

THIS AGREEMENT is made and entered into as of the 18th day of June, 2007 by and between TRONOX LLC, ("Company") and BE&K Construction Company with offices at 2000 International Park Drive, Birmingham, AL 35243 ("Contractor") for work to be performed from time to time at the facility of the Company or one of its affiliates located at Hamilton, Mississippi ("Facility") under the following terms and conditions:

1.  WORK. All work that is to be performed from time to time hereunder by Contractor ("Work") shall be described in a Contractor Work Order ("Work Order"), a specimen form of which is attached hereto as Exhibit "A", to which may be attached plans, drawings and specifications governing such Work. Except as otherwise provided in a Work Order, Contractor shall at its own expense (a) furnish everything necessary, proper and incidental for the performance of the Work, including all labor, supervision, materials, tools, equipment, utility connects and disconnects, and services, (b) secure all necessary licenses and permits required for the prosecution of the Work under a Work Order and provide any bond required by law in connection therewith and (c) report and pay all taxes, including payroll, sales, use, excise and occupational taxes, applicable to materials and services furnished by Contractor under the Work Order. All means and methods used by Contractor in furtherance of the Work shall be Contractor's responsibility and under its control unless specified elsewhere within an applicable Work Order. It is understood that the Contractor will not be doing any design work.

2.  WORK ORDERS. A Work Order, when accepted by Contractor, shall be binding upon the parties hereto and shall incorporate by reference all of the terms and conditions hereof. In addition to the description of the Work to be performed by Contractor, a Work Order shall set forth Contractor's compensation for the Work and the date on which such Work is to be completed. A Work Order may vary the terms of this Agreement only when the Work Order expressly so states and sets forth the particular paragraph hereof that is to be varied. Nothing contained herein shall require the Company to order any Work by Contractor. Company shall be entitled to verbally issue or revise a Work Order where exigent circumstances exist but shall confirm the same in writing within a reasonable time thereafter.

3.  CONDITIONS AFFECTING THE WORK. Prior to signing a Work Order, Contractor will carefully inspect the Work Order along with the location of the Work and any physical constraints, any attached plans, drawings and specifications and call the Company's attention to any error or omission and question of intent associated with the Work Order. By accepting a Work Order, Contractor represents that it has complied with the requirements of the foregoing sentence. All such questions shall be resolved to the satisfaction of the Company and the Contractor prior to execution of the Work Order. During performance of the Work Order, Contractor will promptly inform the Company of variances from the Work Order arising from the location of the Work, proximity of the Work to adjacent facilities, conditions of the Work site, or otherwise, and it will promptly report any changes in anticipated costs or schedule associated with the variances. Any associated revisions to the Work Order shall be subject to the prior approval of the Company.

4.  LIMITATION OF AREAS OCCUPIED FOR WORK. Contractor shall restrict its presence and that of its employees to the area of the Work under the Work Order (including storage and parking areas and areas of access to and from the Work site), all as directed by the Company.

BEK- Tronox MSA 06122007.doc

- 1 -



EXHIBIT

2

5.    WORK CHANGES. The Company may require changes in the scope of the Work under a Work Order at any time by written notice to Contractor, including increases and decreases therein. In such event the compensation payable to Contractor shall be adjusted by mutual agreement of the parties except where the increase or decrease in the Work under a Work Order involves items of the Work to be performed hereunder on a time, materials or other cost basis, or on a basis of units of Work, in which event Contractor shall be compensated on such basis for all such items or units of Work performed under a Work Order, whether there is an increase or decrease in such items or units of Work. No claim by Contractor for extra, additional or different Work under a Work Order or any extension of time within which to complete such Work will be allowed without the Company's written authorization and consent given prior to the undertaking of or incurring of any expense in connection therewith.

6.    CONTINUANCE OF WORK. If any dispute shall arise under a Work Order, including but not limited to disputes relating to payment, the Contractor shall, unless otherwise directed by the Company, continue to prosecute the Work pending resolution thereof by the courts or mutual agreement of the Company and Contractor.

7.    INSPECTION. The Company may conduct such tests and make such inspections of the Work under a Work Order as it deems desirable to ensure that the Work is being performed in accordance with the obligations of the Contractor under this Agreement and the Work Order. Company's right to inspect shall extend during normal business hours to Contractor's (and any applicable subcontractor's) facilities and shops where any portion of the Work is being performed, fabricated, manufactured or assembled as it reasonably deems necessary or appropriate. Contractor shall require in any subcontract permitted by Company that the subcontractor afford Company the access and inspection rights granted herein. If such tests or inspections indicate that the Work fails to satisfy such requirements, Contractor shall at its sole cost and expense remedy the deficiencies therein. Nothing herein shall be construed or interpreted to mean that any inspection, test or approval given by the Company or Company's representative shall relieve Contractor from its obligations under this Agreement and the Work Order, nor be deemed an admission that Contractor's Work is in accordance with the terms of this Agreement and the Work Order.

8.    NONINTERFERENCE WITH FACILITY / LIMITATION OF LIABILITY. All Work by the Contractor under a Work Order shall be done in such a manner as not to interfere with the operation of the Facility and Contractor shall take all action necessary or as requested by the Company to effect the purposes of this Paragraph. Despite this obligation, in no event shall Contractor, its affiliated or associated companies, vendors or subcontractors be liable for any liabilities not expressly assumed in this Contract or for incidental, consequential, indirect or special damages or liabilities of any nature, whether arising from delay, shutdown or interruption of operations, loss of use of facilities, costs of replacement facilities, loss profits on collateral transactions or otherwise. The Company's remedies are limited to those expressly set forth in this contract. Limitations and waivers in this agreement shall apply to any claim against Contract, whether made in contract, breach of warranty, tort (including negligence), or other theory of law.

9.    ACCEPTANCE OF THE WORK. Upon the completion of the Work under a Work Order, the Company shall deliver to the Contractor its written acceptance thereof. Such acceptance or the use of the Work or any part thereof by the Company or the Company's payment of all or any part of the compensation payable to the Contractor under the Work Order shall not be construed or interpreted as an admission that the performance by the Contractor of the Work is in accordance with the requirements of this Agreement and the Work Order or preclude later assertion of claims against the Contractor for deficiencies in the Work.

10.   WARRANTIES. Contractor warrants (i) that the Work under a Work Order shall be performed in a good, safe and workmanlike manner in conformity with the highest industry standards, methods and practices, free from defects in workmanship and shall be performed strictly in accordance with the provisions of this Agreement, and (ii) that all Contractor furnished materials and equipment, if any, incorporated into the Work shall conform to plans, drawings and specifications, if any, shall be new and free from defects, shall be fit for the use and purpose intended, and shall be free and clear of all liens, claims, security interests and encumbrances.

11. REMEDY OF DEFICIENCIES, DAMAGE AND LOSS. Contractor's liability for breach of warranty or failure or defect in performance of the Contract shall be limited to re-performing corrective services of the type originally performed by Contractor with its own forces, beginning at final completion and continuing for twelve (12) months thereafter, provided that Contractor receives written notice of defective work within the warranty period. With respect to parts of the Work performed by subcontractors, Contractor's liability shall be limited to enforcing the warranties given by the said subcontractor with respect to the defective Work.

THERE ARE NO OTHER WARRANTIES OR REMEDIES APPLICABLE TO BE&K'S WORK, ALL IMPLIED WARRANTIES OF EVERY KIND AND NATURE BEING HEREBY EXPRESSLY DISCLAIMED.

12. COMPENSATION. The compensation specified in the Work Order shall be the entire compensation payable to Contractor for the Work and such compensation shall not be subject to adjustment for any reason except as provided in Paragraph 5 hereof. Contractor will send Company on a monthly basis an invoice on Contractor's letterhead for all Work performed, including Work, if any, rendered by third parties under contract with Contractor, through the date of the invoice. Payment shall be due thirty (30) days after receipt of an invoice by Company. The invoice will include a reasonable description of the Work performed, names of personnel providing services, location(s) where services were performed, dates worked, and the charges listed separately for each Work Order being invoiced. The invoice will reflect or show any discounts from Contractor's normal billing rates. Such discounts are not subject to recoupment by the Contractor in the future. All invoices submitted shall contain such additional detail as the Company may reasonably direct. If Contractor is to be compensated on a time, materials or other cost basis for all or any part of the Work under a Work Order, Contractor shall maintain its books and records with respect to such charges in accordance with generally accepted accounting practices ("GAAP)" or Other Comprehensive Basis of Accounting ("OCBOA") as may be necessary for Company's auditors to confirm compliance with the provisions of this Agreement and validate all charges contained in the invoices submitted by Contractor. Such books and records shall be retained for a period of two (2) years after the calendar year in which such charges are invoiced and the Company or its independent auditors shall have the right at all reasonable times during such period to audit and inspect such books and records to verify the charges.

13. TERM. This Agreement shall remain in effect from the date first written above until terminated as provided in Paragraph 14.

14. TERMINATION. Either party hereto may terminate this Agreement upon written notice to the other except that such termination by Contractor shall not be effective with respect to any Work Order accepted by the Contractor prior to such termination. The Company may, however, without the consent or fault of Contractor terminate the Work under a Work Order for the convenience of the Company at any time upon written notice to Contractor. If Contractor is to be compensated for all or any part of the Work under a Work Order on a time, materials or other cost basis, or on a basis of units of Work performed, Contractor shall upon such early termination by the Company be paid all compensation earned to the date of termination of such Work. If Contractor is to be compensated for all, or any part of the Work under a Work Order on a lump sum basis, the compensation to be paid for such terminated Work shall be adjusted by the mutual agreement of the parties. In no event, however, shall Contractor be entitled to any prospective profits or reimbursement of prospective overhead, general expenses, administrative expenses or damages (consequential or otherwise) because of such early termination. In the event Contractor is terminated under a Work Order, Contractor hereby assigns to Company all approved subcontracts conditioned solely upon Company's acceptance of one or more such contracts by written notice to Contractor. Contractor shall include in all approved subcontracts a term binding subcontractor to such assignment.

15. INDEMNITY. (a) Contractor agrees to indemnify, defend, and hold the Company free and harmless from and against any and all third party claims of liability, losses, damages, bodily injuries (including sickness, disease and death), property damages, contamination or adverse effects on the environment, fines,

penalties and expenses directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order, unless caused by Company's sole negligence. (b) As used in this Paragraph, the term "Company" shall mean Tronox LLC, subsidiaries and affiliates of both, and the directors, officers, employees and agents of all the foregoing. The term "Affiliate" is defined as a company or other party that owns or controls, is owned or controlled by or is owned or controlled in common with Company.

16. INSURANCE. At all times during the term of this Agreement, Contractor shall carry, at its own expense and with deductibles for its sole account, adequate insurance with reputable companies covering all work to be performed hereunder, with companies, forms, and amounts acceptable to Company, and shall furnish such evidence thereof as may be required by Company. All insurance companies must be authorized to do business in the state where the Work is to be performed, with an A.M. Best Company Inc. or equivalent rating of B+ or better or as otherwise acceptable to Company. Any failure by Contractor to obtain and maintain such coverages, including the additional insured requirements, shall constitute a breach hereof and Contractor shall be solely responsible for any loss suffered as a result of such deficiency in coverage. Contractor shall maintain without limitation the following minimum coverages:

(A)   Workers' Compensation Insurance covering all employees as required to comply with the laws of the State where operations are conducted and Employer's Liability Insurance with a limit of not less than $500,000. If operations are conducted in a monopolistic state, the Employer's Liability Insurance shall be provided through a Stop Gap endorsement.

(B)   General Liability Insurance covering all operations hereunder with a combined single limit of not less than $1,000,000 each occurrence for bodily injury and/or property damage. The policy shall include, but not be limited to, Products and Completed Operations, Independent Contractors (for work sublet), Pollution, Cross Liability, Broad Form Property Damage, Blanket Contractual Liability and coverage for Explosion (X), Collapse (C) and Underground (U) hazards.

(C)   Automobile Liability Insurance covering all automotive equipment used in performing the Work hereunder (whether owned, non-owned or hired) with a combined single limit of not less than $1,000,000 each accident for bodily injury and/or property damage. If hauling hazardous waste, the policy shall have the Pollution Exclusion deleted and the MCS-90 endorsement attached.

(D)   Excess Umbrella Liability Insured to total $5,000,000 when combined separately with each of the limits above.

Owner will insure or self insure its property and existing facilities at or near the site of the Work . Contractor shall be responsible for any damage to such property and existing facilities, arising as a result of the Work conducted by Contractor or any of its subcontractors and vendors, up to the amount of $1,000,000 (Owner's deductible). Owner hereby waives its rights and the subrogation rights of its insurers against Contractor, its subcontractors and vendors, for any loss or damage to such property, in excess of $1,000,000 .

The policies specified in (B) through (D) above shall be endorsed to included Company, as defined in Paragraph 15(b), as an additional insured for losses caused by Contractor's Work performed under the Agreement. The policies above shall be primary to policies purchased and maintained by Company. Except where not permitted under State law, all policies required herein shall expressly waive subrogation against the Company, as defined in Paragraph 15(b).

No form of liability "self-insurance" is acceptable or allowable under the terms of this Agreement unless agreed to in writing by both the Company and the Contractor prior to commencement of the Work.

BEK- Tronox MSA 08122007.doc

- 4 -

Policy deductibles or retention are not considered "self-insurance" and such deductible or retention shall be for the account of the party procuring coverage.

If the policy or policies specified in (B) and/or (D) above is written on a "claims-made" basis, it must provide for (i) a retroactive date prior to, or coincident with, the commencement of the Work under this Agreement and (ii) a minimum extended claims reporting period of one (1) year.

Prior to commencing work hereunder, Contractor shall furnish Company with an insurance certificate as evidence of the above coverages and requirements and containing the following statement:

> "Thirty (30) days' prior written notice will be given to Tronox LLC in the event of cancellation or material change in coverage."

Contractor will provide the Company with any special insurance and additional coverages or limits which the Company may by notice to Contractor require with the reasonable cost thereof to be addressed by mutual agreement of the parties.

Contractor hereby waives any rights to recover against Company for loss or damage to Contractor's equipment, materials, and tools used in the performance of the Work. All insurance carried by Contractor and its subcontractors covering risk of loss or damage to materials, tools and equipment used in the performance of the Work shall provide a waiver of subrogation against the Company, as defined in Paragraph 15(b).

If Contractor or any of its subcontractors rents construction equipment for the Work, the party renting the equipment shall hold the other party and Company, as defined in Paragraph 15(b), free and harmless with respect to risk of loss of or damage to such equipment. Any insurance carried by Contractor or any of its subcontractors on such equipment shall provide for a waiver of subrogation against Company, as defined in Paragraph 15(b).

Contractor shall require all subcontractors to obtain, maintain and keep in force the same types and limits of insurance as required of the Contractor during the time in which they are engaged in performing work hereunder, and furnish Company acceptable evidence of such insurance coverage upon request. All policies of subcontractors shall be endorsed to provide a waiver of subrogation in favor of Company. Any deficiencies in such coverage shall be the sole responsibility of Contractor and the Contractor's insurance shall become Primary in the event of a claim.

It is expressly understood and agreed that the coverages required represent Company's minimum requirements and are not to be construed to void or limit Contractor's indemnity obligations as contained in this Agreement. Regardless of the requirements as to insurance to be carried as provided for herein, the insolvency, bankruptcy or failure of any insurance company carrying insurance of Contractor, the failure of any insurance company to pay claims accruing, or any exclusion to or insufficiency of coverage, shall not be held to affect, negate or waive any provisions of this Agreement. If any defense, indemnity or insurance provision contained in this Agreement conflicts with, is prohibited by or violates public policy under any federal, state or other law determined to be applicable to a particular situation arising or involving any Work hereunder, it is understood and agreed that the conflicting, prohibited or violating provisions shall be deemed automatically amended, effective *ab initio*, in that situation to the extent - but only to the extent - necessary to conform with, not be prohibited by and avoid violating public policy under such applicable law and so as to still accomplish as nearly as possible the intention of such provision as originally written. The parties hereto declare it is their intention that the defense, indemnity and insurance provisions of this Agreement be binding and enforceable in any given situation arising hereunder to the maximum extent permitted by the law applicable in that situation.

17. APPLICABLE LAWS. Contractor and its subcontractors shall at all times comply with all applicable laws (including, but not limited to, state and federal environmental laws and/or the Occupational Safety and Health Act of 1970, as amended), ordinances, rules, regulations, codes and orders of the United

BEK- Tronox MSA 06122007.doc

States, any state, county or any executive or administrative agency thereof and any other governmental body having any jurisdiction over the Work under a Work Order.

18. TITLE. Title to all Work completed or in the course of completion under a Work Order and title to all equipment and materials to be incorporated into the Work under a Work Order on account of which the Company has made any payment shall be in the Company. Notwithstanding title thereto being in the Company, the care, custody, control and protection of the Work under a Work Order and of such materials and equipment shall be with the Contractor, and the risk of loss or damage thereto shall be borne by Contractor until acceptance of the Work.

19. PROPRIETARY INFORMATION. Contractor shall maintain in secrecy all proprietary information of the Company revealed to it during the performance of the Work hereunder, including that relating to equipment and to manufacturing processes, and shall secure from others in its employ, including any subcontractors, agreements for the benefit of the Company to effect the purpose of this Paragraph. All drawings, plans, specifications and other design documents (together, "Design Documents"), whether provided to, purchased or generated by Contractor in connection with a Work Order shall be deemed work for hire, and remain the property of Company including without limitation all applicable Copyrights. To the extent that all right title, and interest in and to the Design Documents do not vest in Company under the work for hire doctrine, then Contractor irrevocably assigns to Company without any further consideration all right, title, and interest in and to the Design Drawings. At the conclusion of the Work under any Work Order or upon termination of any Work Order or this Agreement, Contractor shall return to Company all copies of design drawings and other proprietary information or documents furnished to it by Company. Contractor shall not, except with the consent of the proprietor, disclose to Company nor use in the course of the Work any proprietary information, confidential information, inventions (patented or not) or trade secrets belonging to any other person, firm or corporation.

20. "DEEMED EXPORT" ASSURANCE. Contractor may, in the course of Work, be exposed to information, software, equipment or material which is controlled for export purposes under laws and regulations of the United States. Such exposure may constitute an unauthorized or "deemed export" to the home country of any person employed by Contractor who has neither U.S. citizenship nor permanent residency status. Therefore, Contractor represents and warrants that it will not employ any foreign national (non-U.S. citizen without permanent residency status) in the performance of Work without prior written authorization from Company or without first obtaining a license from the appropriate licensing authority of the United States government for such deemed export.

21. NON-WAIVER AND SEVERABILITY. No course of dealing between the parties hereto nor any failure by the Company at any time, or from time to time, to enforce any term or condition of this Agreement or of a Work Order shall constitute a waiver of such term or condition, nor shall such course of dealing or failure affect such term or condition in any way or the right of the Company at any time to avail itself of such remedies as it may have for any breach of such term or condition. Should any provision of this Agreement or a Work Order be held invalid or unenforceable, the remaining terms and conditions of the Agreement will remain in full force and effect consistent with the terms and conditions of the Agreement and Work Order taken as a whole.

22. PHOTOGRAPHS OF WORK AND PUBLICITY. No film or digital photograph of the Work or of the Facility shall be taken or used nor shall Contractor, its sub-contractors, vendors, or suppliers issue any press release or otherwise publicize the fact it is performing work for Company without prior written approval of Company. All negatives and prints of any photograph taken pursuant to Company's permission shall be the property of the Company and shall be delivered to it upon request. Any and all requests for comments, statements, interviews or any other information whatsoever in relation to Company, the Work or the Facility received from the news media or other third parties shall be referred to Company for response and further handling and shall not otherwise be acted upon by Contractor.

23. ASSIGNMENT AND SUBCONTRACTING. Contractor shall not assign this Agreement or any Work Order, subcontract any of the Work under a Work Order, or assign any moneys to become due hereunder without the prior written consent of the Company. The consent of the Company to any such assignment

or subcontracting shall not relieve Contractor of the complete responsibility that the Work under a Work Order be performed in accordance with the terms and conditions of this Agreement and the Work Order and Contractor shall remain liable to the Company as if no such assignment or subcontract had been made. Contractor will "delegate" its obligations hereunder to all subcontractors and contractually bind any approved subcontractors to the Contractor to the same extent as Contractor is bound to the Company hereunder.

24.   CONTRACTOR LICENSED. Contractor represents that it has obtained all licenses and permits required by applicable federal, state and local laws, regulations and ordinances to do the Work under a Work Order. Contractor further represents that it is fully experienced and qualified to perform the Work under a Work Order and that it is properly equipped, organized and financed to perform and complete such Work.

25.   LIENS. Contractor shall discharge at once all liens which may be filed in connection with the Work under a Work Order and shall defend and hold the Company and Facility free and harmless therefrom. Prior to any payment under a Work Order and as a condition thereof, Contractor shall furnish to the Company written releases and lien waivers for all labor, materials or equipment used in performance of the Work.

26.   HOUSEKEEPING. Contractor shall at all times maintain good housekeeping at the Work site under a Work Order and upon completion of the Work shall remove all debris and waste material and leave the Work site in a neat and clean condition, all to the satisfaction of the Company. Additionally, Contractor shall employ sufficient safeguard procedures to protect the work site in the event of weather related emergencies such as high winds, flooding or the like.   Such safeguard procedures shall include requirements that all equipment and materials be secured or stored at the end of each day.

27.   OTHER CONTRACTORS. The Company reserves the right to enter into contracts with other contractors for work to be performed contemporaneously with the performance of Work under a Work Order whether or not such other work is related to the Work. Contractor agrees to fully cooperate with such other contractors, if any, in properly coordinating its work with theirs. The decision of the Company with respect to all matters of coordination shall be final and binding upon Contractor.

28.   INDEPENDENT CONTRACTOR. In performance of the Work under a Work Order, Contractor shall act solely as an independent contractor in performing the Work contemplated by this Agreement, and nothing herein shall, under any circumstances, constitute Contractor or its employees or subcontractors, the agent or employee of the Company for tax purposes (FICA, income and the like), for purposes of claiming entitlement to any benefits offered, paid or provided by the Company to the Company's employees including, but not limited to, medical, retirement, stock ownership or savings plans, or for any other purpose.   Contractor agrees to defend, indemnify and hold the Company free and harmless from and against any and all claims, demands and causes of action brought by or on behalf of Contractor's employees or subcontractors which are based on a claimed employee/employer or master/servant relationship between the Company and any such employee or subcontractor of Contractor or brought by any governmental entity, foreign or domestic, based upon any similar allegation or claim.

29.   SAFETY, HEALTH AND THE ENVIRONMENT. Contractor and its subcontractors shall at all times comply with the environmental, health and safety rules and regulations of the Company applicable to the Work and all materials, equipment and Work shall comply therewith. Contractor and its subcontractors, as well as their personnel, shall also comply with the drug and alcohol policy in effect at the Facility. Contractor shall provide Company written verification that such environmental, health and safety requirements, including the drug and alcohol policy, have been reviewed with the Contractor's and subcontractors' personnel and that they understand the requirements. Upon request of Company, Contractor shall direct each of its personnel engaged in the Work to read Company's safety handbook and standard "General Conditions of Service" form and then date, sign and return the same to Company. All personal protection equipment, including gloves, protective headgear, steel-toed footwear and safety glasses, shall be provided by Contractor at no expense to Company. Contractor shall be responsible for the lawful disposal of any waste generated during the course of the Work unless otherwise provided in the Work Order. Good housekeeping in the work area must be maintained at all times. Contractor shall promptly notify Company of (a) any accident or occurrence involving damage to Company or third party

property; (b) any illness or injury suffered by Contractor's personnel, resulting from, or in any way associated with, performance of the Work; or (c) any spills or releases of hazardous or toxic materials. Company may require removal of any personnel of Contractor or any subcontractor from the Facility in the best interest of the principles of Company's environmental, safety and health rules and regulations, including its drug and alcohol policy.

30. CONFLICT OF INTEREST. Contractor shall not pay any commissions, fees or grant any rebates to any employee or officer of Company nor favor any employee or officer of Company with gifts or entertainment of other than nominal value nor enter into business arrangements with any employee or officer of Company, other than as a representative of Company, without the prior written approval of Company.

31. ENTIRE AGREEMENT AND AMENDMENTS. No change, modification of or addition to this Agreement or any Work Order hereunder shall be effective unless in writing and signed by both parties. This Agreement and the Work Order constitutes the entire understanding between the parties and supercede any prior negotiations, understandings and agreements, written or oral, with respect to the Work.

32. SURVIVAL. The provisions of Articles 8, 10, 11, 15, 16 (liability limitations) & 19 shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TRONOX LLC                                      BE&K CONSTRUCTION COMPANY
                                                        (Contractor)

By: _____                   By: _____

Title: _Plant Manager_____                    Title: _VP Industrial Services_


                    Tronox
                    Legal Dept



**TRONOX INCORPORATED**
**AND SUBSIDIARY COMPANIES**

Tronox Incorporated

CONTRACTOR WORK ORDER

| | |
|---|---|
| Contractor | |
| Work Order | : 00395950 |
| Release | : |
| | |
| Printed | : 12/16/08 |
| Page | : 1 |

BEK 2009 TO PROVIDE CONTRACT LABOR FOR UNIT 400 TII MECHANIC

Type      : FIELD LABOR CONTRACT          Execution Date: 12/16/08
Compensation :      $37,400.00 USD        Start/End Date: 01/01/09 - 12/31/09
Pricing: ESTIMATE                         Project       :
Bill To:                                  Work Location :
Tronox LLC
Attn: Accounts Payable
P.O. Box 268859
Oklahoma City        OK 73126

* Contractor shall perform the work described in the "Scope of Work" set out as
  Attachment A to this Contractor Work Order ("Work"). Contractor performance
  is subject to the terms and conditions of this Contractor Work Order and the
  Master Work Agreement for Construction or Field Services of the parties dated
  6-18-07 .
* Compensation of Contractor Work Order will be paid within thirty days after
  completion of the Work and receipt of the invoice. Payment shall be pursuant
  to Exhibit A of the Agreement if time and materials or another cost basis
  pricing method is used.
* Time is of the essence and Contractor shall commence and complete the Work no
  later than the respective "Start/End Dates" noted above.

Contractor : 35439        01          Please Direct Inquiries to:
B E & K INDUSTRIAL SERVICES               RAMONA R. GARDNER
200 INTERNATIONAL PARK DR             Title: CONTRACT ADMIN.
PO BOX 2332                           Phone: 6623438672          Ext: 8672
                                      Fax  :
BIRMINGHAM        AL 35243

Contact:
Phone  : 205 972-6535

_W S Hrly_
Contractor Authorized Signature       Company Authorized Signature

_BEK Site Manager_                    _Contract Admin._
Title                                 Title

_1-5-09_                              _1-6-09_
Date Signed        Phone              Date Signed        Phone

**EXHIBIT**

3



**FILED**

JAN 2 8 2011

DAVID CREWS, CLERK
By ⟨signature⟩
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GARY WAYNE WELLS and TAMMY JAYNE WELLS                    PLAINTIFFS

VERSUS                                        NO. _1:11cv23-M-D_

TRONOX, LLC                                               DEFENDANT

---

## COMPLAINT
*Jury Trial Requested*

---

COME NOW plaintiffs, by and through their attorney and file this their complaint against

defendant and, in support thereof, would show unto the Court the following:

### PARTIES

1.   Plaintiff, Gary Wayne Wells, is an adult resident citizen of Monroe County,

Mississippi.

2.   Plaintiff, Tammy Jayne Wells, is an adult resident citizen of Monroe County,

Mississippi and is the wife of Gary Wayne Wells.

3.   Defendant, Tronox, LLC., is a Delaware limited liability company organized and

existing under the laws of the state of Delaware, with its principal place of business in the state

of Oklahoma.

4.   Tronox has appointed as its agent for service of process CT Corporation System,

645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

### JURISDICTION AND VENUE

5.   This Court has jurisdiction over this proceeding and, pursuant to the provisions of

28 U.S.C. §1332(a).  The defendant is not a citizen of the same state as plaintiff and the amount

in controversy exceeds $75,000.00, exclusive of interest and costs.



**EXHIBIT**

B

6.      Venue is proper pursuant to 28 U.S.C. §81 and §1391 because the events and/or omissions giving rise to the claim occurred within the Northern District of Mississippi, and the injuries at issue in this lawsuit occurred in the Northern District of Mississippi.

7.      Defendant conducts business in the Northern District of Mississippi and has one of its plants located specifically in this judicial district.

### FACTS COMMON TO ALL COUNTS

8.      On July 15, 2009, plaintiff, Gary Wayne Wells (hereinafter "Wells"), while working for BE&K Industrial Services at the Tronox plant in Hamilton, Mississippi, was severely injured when an 8 inch pipe (with 2,300 pounds of pressure) containing titanium dioxide blew out, thereby knocking Wells from his ladder where he was replacing a rupture disc.

9.      Only two (2) of the eight (8) bolts had been removed from the vessel when the blowout occurred.

10.     Wells was blown over sixteen (16) feet by the pressure where he impacted a vent causing his injuries.

11.     Tronox gave Wells (and his employer) a written permit to work on the vessel and valve, thereby representing to him that the vessel had been depressurized and was safe to work on.

12.     As a result of the accident, Wells suffered serious injuries including, but not limited to, a shaft fracture and femoral neck fracture to his right hip and has a permanent limp and impairment.

13.     Subsequent to the accident, Tronox added bleeder valves to the vessel and rotated the pipe 180° degrees to an upward position.

14.     After the accident, Wells was informed by Tronox management that the "accident should never have happened."

15.     BE&K Industrial supervisors took photographs of the pipe after the blowout; however, the photographs were seized by Tronox executives and have never been produced to Wells.

16.     As a result of the accident, Wells hired the undersigned to represent his interest. On February 5, 2010, counsel for Wells sent a letter formally requesting any and all information in Tronox's possession regarding Wells's accident in order to properly evaluate Wells's claim. The following information was specifically requested: Any and all photographs of the accident scene, the written work permit, any and all documents related to vessel depressurization prior the work being performed, documents related to Tronox's investigation of the accident, any root/cause analysis performed by Tronox subsequent to the accident, written warnings, reprimands, or disciplinary actions taken as a result of the accident, any and all subsequent remedial measures taken as a result of the accident and a list of all witnesses and/or individuals who would have knowledge of the investigation. Furthermore, any and all electronic communications related to the accident were requested to be preserved and produced. See attached Exhibit A.

17.     As of this date, Tronox has ignored counsel's request, thereby refusing to produce the requested information.

**COUNT I – NEGLIGENCE**

18.     Plaintiffs re-allege the allegations in paragraphs 1 through 17 above as if fully set out herein.

19.     Defendant failed to provide Wells and his fellow employees with a safe working environment.

20.     Defendant's actions set forth above constitute negligence.  Defendant is liable to the plaintiff for damages sustained based on their negligence.

21.     As a direct, proximate, and foreseeable result of defendant's aforesaid negligence, Wells has been damaged and is entitled to damages in an amount to be proved at trial.

### COUNT II – NEGLIGENT MISREPRESENTATION

22.     Plaintiffs re-allege the allegations in paragraphs 1 through 21 above as if fully set out herein.

23.     Tronox gave Wells and his employer a written permit to work on the vessel and valve, thereby representing to him that the vessel had been depressurized and was safe to work on.

24.     The said representations as set forth above were false and/or made by defendant without due care as to the truth or falsity of such representations.

25.     Defendant knew or should have known that Wells would rely upon the representations, and Wells did in fact reasonably rely on defendant's representations to his detriment.

26.     As a direct, proximate, and foreseeable result of defendant's negligent misrepresentations, Wells has been damaged and is entitled to damages in an amount to be proved at trial.

## DAMAGES

27.     As a result of the aforesaid actions of defendant, Tronox, plaintiff has incurred medical expenses, loss of income, severe and disabling injuries, pain and suffering, mental anguish, loss of enjoyment of life and other damages of a continuing nature.

28.     Wells's reasonable anticipated damages proximately caused by the aforesaid actions of defendant include future pain, suffering, and mental anguish, future loss of wages and loss of wage earning capacity, future medical expenses, permanent disfigurement, permanent physical impairment, past and future loss of enjoyment of life because he is unable to engage in, perform as proficiently, and enjoy as much, many activities, pastimes, and hobbies in which he engaged, performed proficiently and enjoyed prior to the accident described above.

29.     As a proximate result of the aforesaid actions of the defendant, Tammy Jayne Wells, the wife of Gary Wayne Wells, has suffered loss of consortium including, but not limited to, loss of society and companionship, interference with conjugal rights, and being forced to provide previously unnecessary physical assistance, such as household chores and chores associated with lawn and garden maintenance which were handled primarily by her husband, Gary Wayne Wells, prior to the accident.

WHEREFORE, PREMISES CONSIDERED, plaintiffs bring this action against the defendant and demand compensatory damages in an amount constituting reasonable compensation for all the damage sustained by reason of the plaintiffs' injuries in an amount excess of the minimal jurisdictional limits of this Court, plus pre and post judgment interest, costs, attorney fees, and such other relief as plaintiffs may be entitled. Plaintiffs hereby demand a trial by jury.

Respectfully submitted this the 26th day of January, 2011.

WILLIAM T. COOPER, MBN 9588
Attorney for Plaintiffs

OF COUNSEL:

John W. Crowell, MBN 7906
NICHOLS CROWELL GILLIS COOPER & AMOS
Post Office Box 1827
Columbus, MS 39703
PHONE: (662) 243-7334

T. W. Pace, MBN 3976
PACE LAW FIRM
Attorney at Law
PO Box 23
Amory, MS 38821
PHONE:  (662) 256-3866

**BE&K
CONSTRUCTION
COMPANY**



A subsidiary of BE&K, Inc.

February 22, 2011

**VIA FACSIMILE & U.S. MAIL**
Scott F. Singley
Brunini, Grantham, Gwoer & Hewes, P.C.
410 Main Street
Columubs, MS 39701

### RE: Gary Wells v. Tronox LLC

Dear Scott:

We are in receipt of your letters dated November 30, 2010 and February 11, 2011 regarding the above captioned claim and demand for indemnity. I have been assigned the handling of the case on behalf of the company.

The indemnity agreement in the applicable contract reads as follows:

INDEMNITY. (a) Contractor agrees to indemnify, defend, and hold the Company free and harmless from and against any and all third party claims of liability, losses, damages, bodily injuries (including sickness, diseases and death), property damages, contamination or adverse effects on the environment, fines, penalties and expenses directly or indirectly arising out of or resulting from: (i) the performance of the Work under a Work Order by Contractor or its subcontractors or from any operation or activity of Contractor or its subcontractors in connection therewith and (ii) any failure by Contractor or its subcontractors to comply with the requirements of this Agreement or of the Work Order, <u>unless caused by Company's sole negligence</u>. (emphasis added)

Our initial information leads to the strong possibility that Tronox may have been solely negligent for the accident, thus rendering the indemnity obligation inapplicable. We have reported the claim to our general liability carrier and will cooperate in its investigation of the tender and the underlying accident. We will be in contact as soon as a decision is made regarding the indemnity obligation.



Gary Wells v. Tronox
2

and insurance coverage as the additional insured status is contractually limited to
the indemnity obligation.  In the meantime, should you have questions regarding
the claim, feel free to contact me.

Sincerely,

Valerie S. Camp
Senior Counsel



BRUNINI

ATTORNEYS AT LAW

SCOTT F. SINGLEY
E-mail: ssingley@brunini.com
Telephone:  662-240-9744
**Direct No.:  662-329-8360**
Facsimile:   662-240-4127

410 Main Street
Columbus, Mississippi 39701

Post Office Box 7520
Columbus, Mississippi 39705

April 25, 2011

Valerie S. Camp, Esq.
BE&K Construction Company
P.O. Box 12606
Birmingham, AL 35202-6606
*__Via U.S. Mail and Facsimile__*

      RE:   Gary Wells v. Tronox LLC

Dear Valerie:

I am in receipt of your letter dated February 22, 2011, which was sent in response to my letters dated November 30, 2010 and February 11, 2011.

Your letter states that "[o]ur initial information leads to the strong possibility that Tronox may have been solely negligent for the accident [involving Wells], thus rendering the indemnity obligation inapplicable." However, at this point, there has been no determination made as to the potential negligence of Tronox, or any other individual or entity, and no determination has been made as to the proximate cause or causes of Mr. Wells alleged injuries. In fact, in its Answer to the Wells' Complaint, Tronox has denied liability on all counts. Furthermore, Tronox believes it can prove that Wells' alleged injuries were proximately caused in whole or in part by the negligence of Wells and/or BE&K. For your convenience, I have attached a copy of the Answer and Affirmative Defenses of Defendant Tronox LLC, which was filed in the *Wells* matter on February 23, 2011.

Accordingly, under paragraph 15 of the Master Work Agreement ("MWA") between Tronox and BE&K, BE&K has an obligation to defend Tronox in this matter since the issues of negligence and causation are disputed and undetermined. Furthermore, to the extent the fact finder ultimately determines that Wells' alleged injuries were not proximately caused in whole or in part by the negligence of Tronox, the indemnity obligation will remain applicable.

Additionally, your letter notes that Tronox's "additional insured status," pursuant to the insurance obtained by BE&K under paragraph 16 of the MWA, "is contractually limited to the indemnity obligation." However, pursuant to the plain language of paragraph 16, BE&K's obligation to provide insurance coverage to Tronox is clearly not limited to or linked to the obligation to indemnify under paragraph 15 of the MWA. Instead, paragraph 16 requires BE&K to purchase endorsements for its general liability, automobile liability, and excess umbrella policies to include Tronox as an additional insured "for losses caused by Contractors' work performed under the Agreement," without limitation. Furthermore, paragraph 16 requires these policies to "be primary

C0073531

EXHIBIT

E

tabbies

April 25, 2011
Page 2

to policies purchased and maintained . . ." by Tronox.  With regard to any failure to provide the required insurance coverage, paragraph 16 provides that "[a]ny failure by Contractor to obtain and maintain such coverages, including the additional insured requirements, shall constitute a breach hereof and Contractor shall be solely responsible for any loss suffered as a result of such deficiency and coverage."

Therefore, paragraph 16 clearly requires BE&K to procure insurance coverage on all losses related to work performed by BE&K under the MWA, including but not limited to, losses proximately caused by the "sole negligence" of Tronox. While Tronox has not reviewed the applicable insurance policies, if the coverage is limited to the indemnity obligation under paragraph 15, as stated in your letter, then BE&K has clearly breached its obligation under paragraph 15 to procure insurance coverage.[1]  Pursuant to paragraph 16, BE&K "shall be solely responsible for any loss suffered [by Tronox] as a result" of BE&K's breach of paragraph 16.

Based on the foregoing, Tronox reiterates its prior demand that BE&K agree to indemnify, defend, and hold Tronox free and harmless under paragraph 15 of the MWA. Additionally, Tronox demands that BE&K provide the insurance coverage it is obligated to provide under paragraph 16 of the MWA, and/or that BE&K agree to compensate Tronox for all losses Tronox may suffer as a result of BE&K's breach of paragraph 16 of the MWA.

Due to the fact that the parties are close to commencing discovery in the *Wells* matter, Tronox has no choice but to pursue all legal rights it possesses pursuant to the MWA if it does not receive a satisfactory response to its demands within ten (10) days.

We look forward to hearing BE&K's response.

Sincerely yours,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Scott F. Singley

SFS/cbs
cc:    Matt Paque, Esq. (via email)
       Bill Stone (via email)
       J. Gordon Flowers, Esq. (via email)
       Lindsey S. Wiseman, Esq. (via email)

---

[1]  Please also provide us with copies of the Commercial General Liability and Umbrella Liability policies as requested in my prior letters.

C0073531

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISIPPI
EASTER DIVISION

GARY WAYNE WELLS and
TAMMY JAYNE WELLS                                    PLAINTIFFS

v.                                                   NO. 1:11CV23-M-D

TRONOX, LLC                                          DEFENDANT

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT TRONOX, LLC

Defendant Tronox, LLC ("Tronox") files its Answer and Affirmative Defenses to the

Complaint filed against it by Plaintiffs Gary Wayne Wells and Tammy Jayne Wells ("Plaintiffs")

as follows:

### PARTIES

1.      Tronox is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 1. of the Complaint, and therefore, denies the same.

2.      Tronox is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 2. of the Complaint, and therefore, denies the same.

3.      Tronox admits the allegations of Paragraph 3. of the Complaint.

4.      Tronox admits the allegations of Paragraph 4. of the Complaint.

### JURISDICTION AND VENUE

5.      Tronox admits the allegations of Paragraph 5. of the Complaint to the extent that

diversity jurisdiction exists and that Plaintiffs have alleged damages exceeding $75,000.00, but

specifically denies that Plaintiffs are entitled to any relief whatsoever from Tronox.

6.      Tronox admits the allegations of Paragraph 6. of the Complaint.

7.      Tronox admits the allegations of Paragraph 7. of the Complaint.

### FACTS COMMON TO ALL COUNTS

8.      Tronox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8. of the Complaint, and therefore, denies the same.

9.      Tronox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9. of the Complaint, and therefore, denies the same.

10.     Tronox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10. of the Complaint, and therefore, denies the same.

11.     Tronox admits that BE&K Industrial Services received a permit, but denies the remaining allegations of Paragraph 11. of the Complaint and would affirmatively aver that the contents of the permit speak for themselves.

12.     Tronox denies the allegations of Paragraph 12. of the Complaint.

13.     Tronox denies the allegations of Paragraph 13. of the Complaint.

14.     Tronox denies the allegations of Paragraph 14. of the Complaint.

15.     Tronox denies the allegations of Paragraph 15. of the Complaint.

16.     Tronox admits that Plaintiffs delivered a letter to Tronox attached to the Complaint as Exhibit "A" and would affirmatively aver that the contents of the letter speak for themselves.  Tronox denies the remaining allegations of Paragraph 16. of the Complaint.

17.     Tronox denies the allegations of Paragraph 17. of the Complaint.

### COUNT I – NEGLIGENCE

18.     Paragraph 18. of the Complaint contains no allegation to which a response is required.  To the extent that a response may be deemed to be required, Tronox denies the allegations of Paragraph 18.

19.     Tronox denies the allegations of Paragraph 19. of the Complaint.

20.     Tronox denies the allegations of Paragraph 20. of the Complaint.

21.     Tronox denies the allegations of Paragraph 21. of the Complaint.

### COUNT II – NEGLIGENT MISREPRESENTATION

22.     Paragraph 22. of the Complaint contains no allegation to which a response is required. To the extent that a response may be deemed to be required, Tronox denies the allegations of Paragraph 22.

23.     Tronox admits that BE&K Industrial Services received a permit, but denies the remaining allegations of Paragraph 23. of the Complaint and would affirmatively aver that the contents of the permit speak for themselves.

24.     Tronox denies the allegations of Paragraph 24. of the Complaint.

25.     Tronox denies the allegations of Paragraph 25. of the Complaint.

26.     Tronox denies the allegations of Paragraph 26. of the Complaint.

### DAMAGES

27.     Tronox denies the allegations of Paragraph 27. of the Complaint.

28.     Tronox denies the allegations of Paragraph 28. of the Complaint.

29.     Tronox denies the allegations of Paragraph 29. of the Complaint.

Tronox also denies the allegations of the final, unnumbered paragraph beginning "WHEREFORE, PREMISES CONSIDERED," and specifically denies Plaintiffs are entitled to any relief whatsoever from Tronox.

### AFFIRMATIVE DEFENSES

And now, having answered the allegations in the Complaint, Tronox sets forth its specific affirmative defenses, as follows:

### First Defense

The Complaint fails to state a claim upon which relief can be granted, and should therefore be dismissed.

### Second Defense

Plaintiffs' claims are or may be barred by the applicable statutes of limitations and/or statutes of repose.

### Third Defense

Tronox affirmatively asserts all defenses which may be available to it under Miss. R. Civ. P. 12(b).

### Fourth Defense

Tronox affirmatively asserts all defenses which may be available to it under Miss. R. Civ. P. 8(c).

### Fifth Defense

Tronox invokes and reserves all rights and defenses created by Miss. Code Ann. § 85-5-7.

### Sixth Defense

Plaintiffs' claims are barred by the doctrines of laches, unclean hands, ratification, and/or waiver.

### Seventh Defense

Plaintiffs' claims are barred by the doctrine of assumption of risk.

### Eighth Defense

Plaintiffs suffered no damages actually or proximately caused by the actions and/or inactions of Tronox.

4

### Ninth Defense

Plaintiffs' alleged damages, if any, were caused and/or contributed to by Plaintiffs' own negligence and fault, and were the sole proximate cause of the damage alleged.

### Tenth Defense

Plaintiffs' alleged damages, if any, were caused by a pre-existing medical condition, subsequent medical condition, or other reactions and omissions for which Tronox is not responsible.

### Eleventh Defense

Plaintiffs' alleged damages, if any, were the sole proximate cause of superseding or intervening causes, and not due to any omissions or faults on the part of Tronox.

### Twelfth Defense

The actions or omissions of third parties for whom Tronox is not responsible were the sole proximate cause of any damages allegedly suffered by Plaintiffs.

### Thirteenth Defense

Plaintiffs' alleged damages were the result of unavoidable circumstances which could not have been prevented by anyone.

### Fourteenth Defense

Plaintiffs failed to mitigate their alleged damages, if any.

### Fifteenth Defense

Plaintiffs' claims for compensatory damages are subject to any and all applicable laws setting forth limitations or caps on the recovery of such damages.

### Sixteenth Defense

Tronox affirmatively asserts that it exercised all reasonable and ordinary care and

diligence in maintaining its premises in a reasonably safe condition.

### Seventeenth Defense

Plaintiffs are barred from any award of attorneys' fees pursuant to common law of Mississippi.

### Eighteenth Defense

Tronox denies Plaintiffs have suffered any damages. Alternatively, and solely in the event that Plaintiffs succeed in proving liability (which Tronox denies), Tronox is entitled to offset against any award of damages in an amount equal to all interim earnings by Plaintiff Gary Wells from other employment and/or other sources, and all other additional sums that constitute interim earnings Plaintiff Gary Wells could have earned had he made a reasonable effort to mitigate his damages as required by law.

### Nineteenth Defense

Tronox specifically denies each and every material allegation against it, by which Plaintiffs seek to recover for damages alleged sustained as a result of an alleged breach of duty. Further, Tronox denies Plaintiffs are entitled to any relief whatsoever from Tronox. Alternatively, and solely in the event that Plaintiffs succeed in proving liability (which Tronox denies), Tronox reserves the right to seek indemnification and to pursue any other such action deemed necessary against any party, whether named or not, for Tronox's alleged damages, if any, including reasonable attorney's fees and expenses incurred herein, arising out of or relating to Plaintiffs' cause of action. Tronox reserves each and every cause of action against any persons, whether named or not, under common, statutory, tort, contract, or quasi-contract law for Tronox's injuries and damages, if any, including reasonable attorney's fees and expenses incurred herein, arising out of or relating to Plaintiffs' claims.

{C0071296}                                                                                     6

**Twentieth Defense**

Tronox hereby gives notice that it intends to rely upon any other defenses that may become legally available or appear during the discovery proceeding in this case, and hereby reserves its right to amend its Answer to assert any such defense.

THIS, the _____ day of February, 2011.

Respectfully submitted,

TRONOX, LLC

/s/ Scott F. Singley
Scott F. Singley, MSB #100134

OF COUNSEL:

J. Gordon Flowers, Esq., MSB #5378
Scott F. Singley, Esq., MSB #100134
Lindsey S. Wiseman, Esq., MSB#103248
Brunini, Grantham, Grower & Hewes, PLLC
410 Main Street (39701)
P.O. Box 7520
Columbus, MS 39705-7520
Telephone: 662-240-9744
Facsimile: 662-240-4127